UTAHNS FOR BETTER
TRANSPORTATION,
et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT
OF TRANSPORTATION, et
al., Defendants.

Sierra Club,

v.

United States Department
of Transportation, et
al., Defendants.

Nos. CIV.1:01–CV–0007J,
CIV.1:01–CV–0014J.

United States District Court,
D. Utah,
Northern Division.

Aug. 11, 2001.

Lisa A. Kirschner, Craig D. Galli, Michael J. Malmquist, Henry D. Owens, Parsons Behle & Latimer, Robert W. Adler, University of Utah, College of Law, Steven W. Dougherty, Anderson & Karrenberg, Joro Walker, Land & Water Fund of the Rockies, Salt Lake City, UT, Patrick Gallagher, Aaron Isherwood, Alex B. Levinson, Joanne Spalding, Sierra Club Environmental Law Prog., San Francisco, CA, George A. Tsiolis, Snell & Wilmer, Phoenix, AZ, Bradley R. Cahoon, Snell & Wilmer LLP, Salt Lake City, UT, for plaintiffs.

Carlie Christensen, U.S. Attorney's Office, Margaret N. Strand, Venable Baetjer Howard & Civilett LLP, Washington, DC, Alan David Greenberg, U.S. Department of Justice, Environmental Defense, Denver, CO, Daniel Wade Pinkston, Department of Justice, Denver, CO, Clay Samford, U.S. Department of Justice, Environment & Natural Resource Division, Washington, DC, Thomas A. Mitchell, Utah Attorney General's Office, Salt Lake City, UT, Kenneth W. Yeates, Mark A. Wagner, Van, Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, David M. Friedland, Gus B. Bauman, David M. Williamson, Beveridge & Diamond, Washington, DC, W. Cullen Battle, Fabian & Clendenin, Salt Lake City, UT, for defendants.

## DECISION

JENKINS, Senior District Judge.

Plaintiffs Utahns for Better Transportation, Mayor Rocky Anderson and the Sierra Club commenced this consolidated proceeding pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C.A. §§ 702 et seq. (1996). They ask the Court to vacate the Record of Decision ("ROD") of the United States Army Corps of Engineers granting a Clean Water Act Section 404(b) Permit (January 9, 2001), and the Record of Decision of the Federal Highway Administration approving the Request for Additions and Modifications of Access Points on I–215 and I–15 (October 31, 2000), both of which approve the construction of the Legacy Parkway. They also ask the Court to send back the Legacy Parkway Final Environmental Impact Statement ("EIS") for supplementation or revision on the theory that the EIS as prepared by the Utah Department of Transportation ("UDOT") and its contractors and adopted by the two federal agencies did not comply with the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. 4321–4370d (1994). Plaintiffs contend that the EIS fails to give adequate consideration to alternatives to, and to the impacts of the proposed Legacy Parkway "Preferred Alternative,"[1] and they seek to have the agencies conduct further environmental impact analysis:

---

1. The "Preferred Alternative" highway project approved by FHWA consists of

a four-lane, limited-access, divided highway extending approximately 22.5 kilometers (14 miles) from I–215 at 2100 North in Salt Lake City, Utah, northward to I–15 and U.S. 89 near Farmington City, Utah. The Legacy Parkway is located within both Salt Lake County and Davis County. Overpasses (no access) will be provided at Center Street in North Salt Lake, and Glovers Lane, State Street, and Burke Lane in Farmington. Underpasses will be provided at Sheep Road, Denver & Rio Grande (D & RG) Rail Road, and 1250 West in Centerville. Interchanges will be provided at I–215 in Salt Lake City, 500 South in Woods Cross, Parrish Lane in Centerville, and I–15/U.S. 89 in Farmington. The Legacy Parkway is fully funded by the State of Utah.

(FWHA ROD, at 2, ADR038280.) "A multiple-use trail for pedestrians, bicyclists, and equestrians will parallel the highway," (id.) as will an additional corridor and earthen berm constructed to accommodate the Bear River Pipeline and unspecified "future utilities" uses.

We do not seek a ruling by the court that the Legacy Parkway can never be built or that the policies of UDOT are somehow misguided or that the defendants cannot take into consideration desires of local planners in Davis County regarding the location of new highways and their growth plans.

Rather the plaintiffs seek vacatur and a remand so that these federal agencies can undertake the required analysis under NEPA and the Clean Water Act of impacts and alternatives.

(Transcript of Hearing, dated July 26, 2001, at 6:5–13 (Mr. Galli)).[2]

 Under the APA, the Court may grant the relief plaintiffs seek, but only if the plaintiffs demonstrate that the agencies' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...." 5 U.S.C.A. § 706(2)(A). It is the plaintiffs' burden to show that an agency action fails to meet this statutory standard.

Thus, the question presented here proves to be a very narrow one. The Court is not called upon to decide anew whether the FHWA highway access approval or the § 404(b) permit should be granted, or whether the Legacy Parkway will be built, or whether it *should* be built at all. These matters have already been entrusted to the Federal Highway Administration and the Army Corps of Engineers, and to policymakers and executive agencies at the state and local level who have been empowered by the voters to make those kinds of policy decisions.

The sole question presented here is whether in performing their respective functions, these two federal agencies have complied with the law.

To assist in resolving that question, the Court has been furnished an Administrative Record of some 60,000 pages, including an EIS of some 1,600 pages, and "briefs" which together weigh in excess of 6 pounds. The parties have furnished a comprehensive index to the administrative record, and plaintiffs have supplemented the record with some few additional documents intended to assist the Court in this task.

The Court was favored as well with oral argument, which ran a day-and-a-half.

Having reviewed the briefs, the RODs and the EIS with some care, having perused selected portions of the record cited by the parties, and having heard and considered the arguments of counsel, the Court now rules as follows.

## I

Plaintiffs assert that the agencies failed to give adequate consideration to two alternatives to the proposed project: (1) the so-called "Denver & Rio Grande Alignment," and (2) an alternative calling for a much narrower and less damaging configuration for the Legacy Parkway, limiting construction to the width needed for the highway itself. Either alternative, plaintiffs submit, would result in fewer adverse environmental impacts, and both alternatives, plaintiffs insist, were rejected on grounds that do not satisfy NEPA and Clean Water Act requirements.

Plaintiffs correctly point out that the NEPA statute and the regulations and case law surrounding the statute impose a series of obligations on federal agencies considering significant actions that may have environmental impacts. NEPA requires agencies to take a " 'hard look' at

**2.** Mayor Anderson seeks a remand for EIS supplementation detailing the Legacy Park-

way project impacts upon Salt Lake City.

the environmental consequences of proposed actions," utilizing public comment and the "best available" scientific information. *Colorado Environmental Coalition v. Dombeck,* 185 F.3d 1162, 1171 (10th Cir.1999). At the heart of these statutory obligations is the duty to consider alternatives. Plaintiffs also point out that NEPA imposes a continuing duty upon the agencies to evaluate new and changed information, and to supplement earlier analysis with the consideration of more recent data. *See* 40 C.F.R. § 1502.9(c)(1)(ii) (2000).

Plaintiffs argue that the agencies failed to satisfy NEPA requirements as to the D & RG Alignment by failing to respond in a "meaningful and thoughtful" way to comments made during the preparation of the EIS, and by summarily rejecting that D & RG Alignment alternative based upon considerations of estimated cost. Cost should be determinative, plaintiffs insist, only if cost renders the D & RG Alignment infeasible based upon accurate and objective cost data, and the data relied upon by the EIS, plaintiffs insist, is questionable at best. Plaintiffs also argue that the EIS proves deficient in its treatment of impacts on growth—particularly increased vehicle traffic bound for Salt Lake City—as well as impacts on wetlands and wildlife (over an area exceeding 20,000 acres), its estimate of the increased carbon monoxide burden upon the surrounding environment, and its evaluation of mass transit alternatives to the single occupant automobile. The EIS, plaintiffs submit, is grounded upon inadequate data, flawed modeling and defective analysis.

The defendants—both federal and state agencies—acknowledge that "full disclosure ... presenting a full picture" is the agencies' obligation under NEPA. They respond that all of the plaintiffs' objections, reservations, criticisms, and concerns find detailed reflection in the administrative record, and that these were duly considered by both the Federal Highway Administration and the Corps of Engineers. The two agencies, defendants insist, formulated legally sufficient responses embodied in the final EIS, the agency Records of Decision, and appurtenant documents. Defendants suggest that plaintiffs challenge the NEPA process because they are dissatisfied with the outcome, not because the NEPA process itself was legally deficient.

With respect to particular alternatives, the agencies assert that the D & RG Alignment was considered during the NEPA process, and that it is "crystal clear" from the record that apart from cost, the D & RG Alignment was "screened out" because it was understood to be reserved for rail transit. Moreover, the D & RG Alignment goes "right down the middle of the most heavily developed part of Davis County," where local communities would disfavor such construction. (Transcript of Hearing, dated July 26, 2001, at 118:14–15 (Ms. Strand).) The width of the Legacy Parkway, defendants submit, is determined not only by the required width of the traveled lanes, but also by a vegetated median strip required to address water quality concerns; it also serves the full range of project purposes disclosed in the administrative record, including the placement of the Bear River Pipeline. The defendants assert that the agencies compared alignment alternatives using the full width, recognizing that it serves desirable project purposes, including mitigation.

In this matter, the multitude of interested parties—individuals, groups of various kinds such as cities and towns, land developers, government associations, contractors, economic development directors, scenery appreciators, visionaries, concerned environmentalists, government agencies (some with competing and antag-

onistic points of view), bird-watchers, public officeholders, scientists and duck hunters, as well as the general public—all had the opportunity to comment and suggest during the preliminary information-gathering process. Comments received run into the thousands of pages. Many suggestions and observations were not followed by the agencies. Some comments were considered more thoughtfully or intensively than others, and the Legacy Parkway itself evolved as the NEPA process continued.

 The test for NEPA compliance is not the test of perfection. The EIS is by no means perfect, although years in the making with a heavy cost in dollars. The question is *adequacy.* As Mayor Anderson points out, the NEPA process "is intended to help public officials make decisions that are based on an understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 C.F.R. § 1500.1(c). The NEPA process does not make the decisions; it ensures that those public officials who do make the decisions are informed of the environmental consequences of the choices they make.

Does the *Legacy Parkway Final Environmental Impact Statement* describe environmental consequences adequately, that is, sufficient to enable decision makers to make reasonably informed policy decisions? Has the agency taken a "hard look?" And is it sufficiently well-informed by having taken that look that its ultimate decision on the project is neither arbitrary nor capricious, an abuse of discretion, or contrary to law for having relied on the EIS?

The Court has reviewed the *Legacy Parkway Final Environmental Impact Statement* in detail. (*See* ADR023697–ADR026115.) The Court has examined the Records of Decision with care, (*see* ADR038279–ADR038315 (FHWA); ADR059289–ADR059339, filed May 29, 2001 (dkt. no. 35) (COE signed copy); ADR042837–ADR042886 (COE)), and has perused portions of the voluminous administrative record referenced by the parties. (*See also* Index to the Legacy Parkway Administrative Record, Civil Nos. 1:01–CV–0007J & 1:01–CV–0014J, filed April 10, 2001 (dkt. no. 10); Notice of Filing of Additional Administrative Record Documents, filed May 29, 2001 (dkt. no. 35); Index of Documents Supplementing the Administrative Record, filed May 23, 2001 (dkt. no 32) [3].)

I sometimes think we place too much faith in models—computer programs, or similar patterns—rather than walking the ground, looking, seeing, feeling. Models, rather than improving thought, often impose a barrier to thought. We get so wrapped up in our analogue we forget that it is reality we seek to describe. We pretend that by substituting numerical weights or figures for an aesthetic experience that we have done something "scientifically." We haven't, of course. We have simply fortified our illusions. We pretend to measure what is incapable of being measured except by personal experience and personal criteria. The limitations of the famous HGM model used in EIS preparation indicate that the model, while not without some value and thus "reasonable" under NEPA criteria, is obviously not the best methodology. Nor for that matter is it the worst which could have been used.

---

**3.** The Court granted plaintiffs' motion to supplement the administrative record (dkt. no. 25) in open court. The Court also considered the Sierra Club's request that it take judicial notice of certain documents (dkt. no. 63).

While these additional documents are not really the proper subject of judicial notice, the Court orders their filing as further supplementation of the record, for comparison purposes as much as anything.

Were the Court addressing the subject *de novo*, the material would undoubtedly have been handled differently than it was by UDOT and its contractors. The same may well be true had the plaintiffs been given the task of environmental assessment. Each plaintiff places greater or lesser emphasis on the various factors considered by the agencies, and each likely would select a "Preferred Alternative" differing from that selected by UDOT and the federal agencies.[4]

That the plaintiffs or the Court may describe the subject differently, or may evaluate the subject differently, or may reach a different conclusion on the merits of one or another "Preferred Alternative" does not mean that the agencies in making their own choices have not complied with the applicable statutes.

■ Based upon the Court's review of the record and the arguments, it appears that the *Legacy Parkway Final Environmental Impact Statement* satisfies NEPA requirements in form and content, as of the date of its issuance. The Court also concludes that the Federal Highway Administration's Record of Decision, relying as it does on the *Legacy Parkway Final Environmental Impact Statement,* was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.[5]

**II**

Section 404(b) of the Clean Water Act, 33 U.S.C.A. § 1344 (1986), and its corresponding guidelines in turn require that the Corps of Engineers decline to permit the deposit of fill material in the nation's waters where the deposit will have an unacceptable adverse impact or where there is a practicable alternative to the proposed deposit "which would have less adverse impact on the aquatic ecosystem, so long as that alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a) (2000). The agency is also called upon to identify "appropriate and practicable changes to the project plan to minimize the environmental impact of the discharge," using methods outlined in the guidelines. 40 C.F.R. § 230.5(j). If the NEPA documentation does not give consideration to alternatives "in sufficient detail to respond to the requirements of" the Clean Water Act guidelines, "it may be necessary" for the agency "to supplement these NEPA documents with this additional information." 40 C.F.R. § 230.10(a)(4).

Plaintiffs contend that less adverse alternatives exist (specifically the D & RG Alignment—conceded by the EIS to have less impact on wetlands—and a narrower highway configuration (approximately 100 feet versus 328 feet), wherever placed), and that absent a showing by UDOT that less adverse alternatives are not capable of being implemented because of cost, technological limitations, or "logistical impossibility," the Corps should have denied UDOT's application for a § 404 permit. Plaintiffs also contend that unless the Corps finds that the deposit of fill will not cause "significant degradation" of the aquatic ecosystem, taking into account all

---

4. Had the Sierra Club or Utahns for Better Transportation been designated as the organization "responsible for preparing [the] Environmental Impact Statement (EIS) and the Record of Decision (ROD) for two federal agencies, ... and for program management of this design-build project"—*as is HDR,* the Utah Department of Transportation's contractor—the analysis and the outcome of the project would likely be very different indeed.

5. The Court is likewise satisfied that the Federal Highway Administration did not violate § 4(f) of the Department of Transportation Act, 23 U.S.C.A. § 138 (1990), 49 U.S.C.A. § 303 (1997), even assuming that federal highway funds inevitably will be expended on the Legacy Parkway's construction.

practicable measures to minimize such degradation, it must likewise deny the permit.

The defendants respond that the Corps' Record of Decision satisfies the requirements of § 404(b). Besides issuing the ROD, the Corps also prepared a detailed evaluation of § 404(b) factors. (*See* ADR059340–74, filed May 29, 2001 (dkt. no. 35); ADR042887–ADR042921.) The Corps examined the "practicability" of alternatives, considered impacts on water, wetlands, and wildlife, evaluated proposed mitigation, and rationally concluded that the project complies with § 404(b) requirements.

The questions raised under § 404(b) and its corresponding guidelines appear to be the most serious ones raised in this proceeding. In § 404(b), Congress goes beyond insisting that the agency make an informed decision. It attempts to channel agency decisionmaking in favor of a particular outcome: the protection of water and wetlands resources pursuant to the corresponding guidelines.

Congress through § 404(b), with its mandated agency guidelines, compels choice when the alternatives are clear and special factors are not present. Here, the Corps found such factors to be present, and found the choice neither clear nor unambiguous.

■ This is by far the closest of questions, but one to which under the law due deference to agency decision must be paid. (It has long been a mystery to me the justification for such deference, but the Supreme Court has so stated and thus this Court must abide.) A reviewing court may not substitute its own judgment for that of the agency. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 555, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). The question for the court is whether the agency's action was lawful, that is, whether the agency has complied with the requirements imposed by the Congress.

■ Based upon the review of the Corps' Record of Decision, its analysis of § 404(b) factors, and the pertinent portions of the administrative record, the Court concludes that the Army Corps of Engineers did not act arbitrarily or capriciously, did not abuse its discretion, and did not act contrary to law in issuing the Record of Decision approving the § 404(b) permit for the Legacy Parkway project.

## III

While many do not agree with these agencies' decisions, and would, if given the power, make different decisions, the Court concludes that the decisions made by the Federal Highway Administration and the Army Corps of Engineers within the context of the defined Legacy Parkway project are not unlawful under NEPA or the Clean Water Act, and may not be vacated pursuant to § 706 of the APA.

Some plaintiffs seek a broader vision from the decision makers and, indeed, a broader overlook of the whole geographic area may have been wise. Without vision, the people perish.

Nevertheless, review under the APA does not concern itself with what is wise, or with the need for vision. It tests agency action for *reasonableness.* The alternatives chosen for consideration as to the defined project have a rational footing, and thus were not arbitrary nor capricious, even though other alternatives could have reasonably been considered, and the agencies could have produced a better product. That the agencies could have taken a harder look at impacts does not mean that their examination of impacts was not hard enough to satisfy the statute.

As a practical matter, if the mandated process has been adequately complied

with—and this Court concludes that it has—then if one disagrees with the policy choices made, recourse is not to the courts, which can do nothing about policy choices.

Recourse, if any, is to the ballot box.

## IV

We live in a dynamic world. Change is endemic. Some of the information used in the decision-making process has aged significantly even though reasonably accurate at the time of the information-gathering process which resulted in the final EIS. The proposal process has extended over the last five years. Some of the information currently is just plain wrong given the change of circumstances brought about by the passage of time—such as the figures on mass transit. Other information doesn't add up, such as the EIS estimates on carbon monoxide. As to the carbon monoxide estimates, the mathematics by definition needs to be consistent.

While it does not affect the outcome of the limited review of the Records of Decision by this Court, it would be not only refreshing but appropriate for those who gathered information resulting in the EIS voluntarily to revisit and update the information and analysis concerning (1) project cost, (2) transit projections, and (3) carbon monoxide estimates so that public officials and the public at large remain accurately informed as to current cost estimates, current transit estimates and current estimates for carbon monoxide using data, projections, and analyses which are internally and mathematically consistent. *See* 40 C.F.R. § 1502.9(c)(2) (2000) ("Agencies ... [m]ay also prepare supplements when the agency determines that the purposes of the Act will be furthered by doing so."). Such could contribute to the larger vision some plaintiffs seek and the lack of which they lament.

After all, the NEPA process "also guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). It informs "Congress, other agencies, and the general public about the environmental consequences of a certain action in order to spur all interested parties to rethink the wisdom of the action." *Natural Resources Defense Council v. Hodel,* 865 F.2d 288, 296 (D.C.Cir.1988).

For the reasons set forth above, the plaintiffs' request that the Records of Decision issued by the Federal Highway Administration and the Army Corps of Engineers concerning the Legacy Parkway project be vacated and that the *Legacy Parkway Final Environmental Impact Statement* be remanded for further agency action is DENIED.