(No. 35090.—

THE ILLINOIS TOLL HIGHWAY COMMISSION, Appellee, *vs.* THE EDEN CEMETERY ASSOCIATION *et al.,* Appellants.

*Opinion filed May 22, 1959.*

THOMAS F. PIERCE, of Chicago, for appellants.

LATHAM CASTLE, Attorney General, of Springfield, WILLIAM WILSON, and CARYL P. BONOTTO, both of Chicago, (GEORGE W. McGURN, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

This is an appeal by the Eden Cemetery Association and Stewart's Foundation, defendants, from an order of the circuit court of Cook County denying defendants' prayer in their answer for a dismissal of a petition for condemnation filed by the Illinois State Toll Highway Commission, plaintiff.

Defendant Eden Cemetery Association is a religious, not-for-profit corporation. Its sole property consists of a tract of land dedicated to cemetery use. Defendant Stewart's Foundation, a not-for-profit religious corporation, holds a mortgage on the cemetery tract.

The plaintiff alleged in its petition that it was a duly created instrumentality and administrative agency of the State of Illinois under and by virtue of an act of the legislature of the State of Illinois, approved on July 13, 1953, entitled "An Act in relation to the construction, operation, regulation and maintenance of a system of toll highways and to create The Illinois State Toll Highway Commission, and to define its powers and duties, and to repeal an Act therein named," as subsequently amended, (Ill. Rev. Stat. 1957, chap. 121, par. 314a26 *et seq.*); and that by the terms of said act said commission is empowered to con-

struct, relocate, operate, regulate and maintain a system of toll highways through and within the State of Illinois and to acquire in the manner now or hereafter provided by the law of eminent domain of this State, any real or personal property necessary or convenient therefor. We have held the act to be constitutional. (*People* v. *Illinois Toll Highway Com.* 3 Ill.2d 218.) Pursuant to said powers conferred upon it the plaintiff did, by resolution, provide for the construction, etc., of a toll highway to be known as the Northern Illinois Toll Highway of which the Tri-State Route is a part and did by resolution provide for the acquisition of the title to the property involved in this suit.

Plaintiff by its petition seeks to acquire an underground easement for sewer and water facilities across a strip of land 20 feet wide and a quarter of a mile long through defendants' cemetery property. The easement will in no way disturb any present graves as it is to be located on a line between present cemetery lots and a tract of ground now used for agricultural purposes. This cemetery tract extends southward from Irving Park Boulevard in the village of Schiller Park for a little more than one-half mile from Ruby Street on the west, a distance of one-quarter mile. The west boundary of the cemetery tract is approximately one-quarter mile east of the east boundary of the Toll Highway Service Plaza, just south of the Irving Park Boulevard Toll Gate. The toll highway is the Tri-State Route making up part of the Northern Illinois Toll Highway which traverses the northern area of the State for a distance of 187 miles.

The defendants filed an answer admitting the allegations in the petition but denied that the alleged and admitted acts gave the plaintiff the right to take the subject property under the law of eminent domain of the State of Illinois and as a further defense alleged that although the ostensible and purported purpose was the taking of private property for public use as authorized by the law of eminent domain

of the State of Illinois, yet the property sought to be acquired was to service an automobile service station to be operated by the Standard Oil Company of Indiana, a private profit corporation, and also to service a privately owned restaurant which will be operated by a tenant of the Standard Oil Company. It was further averred that the service station and restaurant would be located on property adjacent to the toll highway proper but over a mile from the subject property, all of the intervening property being privately owned. At the hearing the plaintiff withdrew its motion to strike the answer of the defendants and orally admitted the allegations contained in defendants' "further" defense. No evidence was introduced by either party, except evidence concerning the value of the property to be taken.

Defendants make no issue regarding the compensation awarded by the court in the amount of $5,000. While the parties dispute the effect of the pleadings in the trial court we think it amply clear that the real issue to be resolved is whether the proposed taking of the subject property by the plaintiff would be the taking of defendants' property for *private use* under the law of eminent domain in direct contravention of defendants' rights guaranteed by section 13 of article II of the constitution of the State of Illinois.

Section 1 of the Toll Highways Act in setting forth the necessity of a toll highway system declared "that in order to promote the public welfare, and to facilitate vehicular traffic by providing convenient, safe and modern highways * * * it is necessary in the public interest to provide for the construction, operation, regulation and maintenance of a toll highway or a system of toll highways * * * *to eliminate existing traffic hazards,* and to prevent automotive injuries and fatalities." (Emphasis supplied.)

Section 3 of the act, among other things, provides "The said Commission shall have the power to contract and be contracted with, to acquire, hold and convey personal and

real property or any interest therein including rights-of-way, franchises and easements."

Paragraph (e) of section 9 of the act, among other things, provides the Commission shall have the power "to contract with and grant concessions to or to lease to any person * * * or corporation so desiring the use of any part of the toll highways, excluding the paved portion thereof, but including the right of way adjoining said paved portion for motor fuel service stations and facilities, garages, stores, hotels and restaurants, or for any other lawful purpose, * * *."

As appellants emphatically point out, this court has consistently and repeatedly held that private property cannot be taken for private use under the law of eminent domain. (*Nesbitt* v. *Trumbo,* 39 Ill. 110; *Litchfield and Madison Railway Co.* v. *Alton and Southern Railroad,* 305 Ill. 388, 393; *Poole* v. *City of Kankakee,* 406 Ill. 521, 526.) And in the absence of constitutional authorization this is universally the general rule. (C.J.S. 29, pp. 816-818.) To this proposition we steadfastly adhere. Appellant's argument is that since Standard Oil Company of Indiana, a foreign corporation with no public purpose, operates solely for private profit, it has no right to proceed under or benefit from the law of eminent domain of the sovereign State of Illinois, either in its own name or by means of any otherwise legal arrangement with the plaintiff. Cited in support thereof are *Department of Public Works and Buildings* v. *Ryan,* 357 Ill. 150; *Ligare* v. *City of Chicago,* 139 Ill. 46; *Chicago and Northwestern Railway Co.* v. *Galt,* 133 Ill. 657.

In *Department of Public Works and Buildings* v. *Ryan,* 357 Ill. 150, this court held that the Department of Public Works and Buildings is merely a governmental agency of the State created by legislative act, and it has no power or authority beyond that conferred upon it by the legislature; that since the statute did not authorize the department to

condemn property for a new street in a city the department was powerless to do so. In *Ligare* v. *City of Chicago,* 139 Ill. 46, we held that a railroad company under authority to condemn property for its right of way, cannot condemn property for a street of a city; neither can a city, under authority to condemn property for streets, condemn property for a railroad track. In this respect a city will not be permitted to do indirectly what it may not do directly, as the law looks to the substance rather than to the form. And to like effect is the ruling in *Chicago and Northwestern Railway Co.* v. *Galt,* 133 Ill. 657.

We do not believe the foregoing cases to be applicable to the issue in the case at bar. In this modern age of motor vehicle travel we are well aware of the need of safety factors. The very purpose of toll highways is to provide fast, through traffic. To bring about this end it is necessary that there be limited access to the highway, thereby eliminating the danger of accidents arising from traffic entering at numerous places. In order to eliminate this danger on the 187-mile limited access highway it is highly necessary that gasoline service stations and restaurants be located on or in close proximity to the highway proper, thereby reducing a great number of entrances and exits to reach these services. In the *Opinion of the Justices,* 330 Mass. 713, 113 N.E.2d 452, in speaking of this problem at page 468 the court said: "Undoubtedly many travelers will seek food on their way across the State. It will be a great convenience to them to find it at a place where they can park their vehicles without interfering with traffic and without the necessity of looking for an exit, searching for a restaurant, and then re-entering the turnpike." And on the same page the court said: "We think restaurants such as are provided in the act are parts of the turnpike, and that a reasonable amount of land taken for them is land needed for the actual construction of the highway and is

devoted to a public use." Going on, the court said, speaking of gas stations, restaurants and other services: "They do not involve the taking or holding of lands for private purposes. Property leased will still be devoted to the public purpose of the turnpike, to which these services are wholly subordinate."

In the case of *Town of Bloomfield* v. *New Jersey Highway Authority*, 18 N.J. 237, 113 A.2d 658, the court said at page 662: "The operation of the 165-mile limited access highway itself, as a revenue-financed facility, is admittedly a proper governmental function and merely incidental thereto are the various subordinate operations (including the service areas) which are appropriate and necessary for the satisfactory fulfillment of the social objects."

Plaintiff points out that section 4(b) of the Massachusetts statute defines the word "turnpike" as including "all bridges * * * entrance plazas, * * * service stations, restaurants, * * * which the authority may deem necessary for the operation of the turnpike" while the Illinois statute contains no such legislative declaration. We do not find this argument persuasive. While the Illinois statute does not define the toll highway as including service stations and restaurants it does give the Toll Highway Commission the power to contract and grant concessions for motor fuel service stations and restaurants. As plaintiff points out, the operations of a gas station or a restaurant are specialized businesses, and are enterprises calling for experts in these fields. So the legislature wisely granted to the Commission the power to make contracts with, and to grant concessions to, and to lease to persons and private corporations. As the court said in the case of *Berman* v. *Parker*, 348 U.S. 26, 99 L. ed. 27, at pages 33-34: "The public end may be as well or better served through an agency of private enterprise than through a department of government—or so the Congress might conclude. We can-

not say that public ownership is the sole method of promoting the public purposes of community redevelopment projects."

We therefore conclude that service stations and restaurants are an integral part of the toll road system, whether they be operated by the Toll Highway Commission or leased to a private corporation who may be better able to carry on the business, thus bringing about the desired result. We think, further, that since access to sewer and water facilities is essential to the operation of service stations and restaurants, the reasoning which sustains the propriety of arrangements for the latter must uphold as well a reasonable exercise of condemnation powers in obtaining the former. The present exercise of the power has not been shown to be unreasonable under the circumstances; and it follows, therefore, that the allegations of the petition are sufficient to justify the exercise, and that the trial court properly sustained them. The judgment is affirmed.

*Judgment affirmed.*