UTAH DEPARTMENT OF TRANSPOR-
TATION, Plaintiff and Respondent,

v.

Glen E. FULLER and Connie J. Fuller, his
wife; Kimberly G. Fuller and Kent T.
Fuller, Defendants and Appellants.

No. 16404.

Supreme Court of Utah.

Nov. 14, 1979.

Glen E. Fuller, Salt Lake City, for defendants and appellants.

Robert B. Hansen, Atty. Gen., Stephen C. Ward, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

This interlocutory appeal challenges the exercise of the eminent domain powers of the plaintiff, Utah Department of Transportation, in connection with the location and size of a parcel of land condemned for a sewage lagoon proposed to service a highway rest stop area. The lower court denied defendants' motion to dismiss following a hearing and entered an order of immediate occupancy permitting plaintiff to proceed with construction. We affirm.

This matter involves plaintiff's planning of a roadside rest area on the west side of Interstate Highway 15 in Box Elder County approximately five miles northwest of Brigham City and a short distance west of the Brigham City airport. The rest stop will occupy about 19.54 acres. Plaintiff also found it necessary to construct a sewage lagoon to service the rest area; such a facility is required because existing sewer lines are too far away and the ground water is too high to permit construction of a septic tank and accompanying drain fields. Several sites were considered for the sewage lagoon before the final selection of a 6.05-acre area owned by defendants which is located on the east side of the freeway.

Plaintiff presented testimony at a hearing in the court below that the selected site possessed practical and economic advantages over alternate sites. One advantage is a lower elevation to facilitate drainage flow by gravity and eliminate the need for pumping facilities. Witnesses deposed by defendants testified that the selected site would be less costly than the others, taking into consideration the initial expense of acquisition as well as construction costs. The selection comports with Department of Health regulations requiring such lagoons to be at least 1,000 feet from inhabited areas. Plaintiff contends the site will best facilitate the hauling away of excavated soil, which is mostly clay and unsuitable for compaction at the rest area site as fill material. Although plaintiff originally planned

to condemn approximately three acres for the sewage lagoon, a larger site was chosen when the Division of Health determined that more surface area was required because of the evaporation rate at that site.

The proposed capacity of the sewage lagoon is based upon a twenty-year projection and is greater than that required to meet plaintiff's immediate needs. Plaintiff has therefore tentatively agreed to allow area residents to tie into the lagoon at their own expense and with a requirement that they bear their share of maintenance costs. The private landowners' use is subject to termination when the full capacity is required by plaintiff. Plaintiff characterizes this accommodation of landowners as an incidental use not affecting the public necessity of obtaining the selected land for a sewage lagoon. Defendants challenge this shared-use agreement, contending that it unconstitutionally confers special benefits on private and public users beyond the scope of the public purpose of the condemnation.

Other points raised by defendants are that plaintiff's statutory condemnation authority is not broad enough to provide for a noncontiguous sewage lagoon to service a roadside rest area; that the condemnation resolution was defective; and that the choice of the location of the lagoon was arbitrary and would result in a waste of public funds. These contentions will be dealt with before we turn to the special benefits claims of defendants.

■ Plaintiff's authority to acquire real property for highway purposes generally and roadside rest areas specifically is set out in § 27–12–96 and subsection (11), Utah Code Annotated (1953), as amended. That statute states that the term "highway purposes" is not limited exclusively to those enumerated. It is obvious that rest areas offering drinking water and toilet facilities require waste disposal provisions. The record in this case supports the sewage lagoon as the disposal method of choice. Since the statutory language authorizes "[t]he construction and maintenance of roadside rest areas," and the term "maintenance" would logically include waste disposal necessitated

by services offered at the rest area, the power to construct and maintain a sewage lagoon may be implied in the statutory grant of power relied upon by plaintiff. See *Illinois State Toll Highway Commission v. Eden Cemetery Association*, 16 Ill.2d 539, 158 N.E.2d 766, 769–770 (1959), where the court said in connection with condemnation for service facilities on toll highways, "We think . . . that since access to sewer and water facilities is essential to the operation of service stations and restaurants, the reasoning which sustains the propriety of arrangements for the latter must uphold as well a reasonable exercise of condemnation powers in obtaining the former." See also *Tormaschy v. Hjelle*, N.D., 210 N.W.2d 100 (1973).

Although defendants cite *Great Salt Lake Authority v. Island Ranching Co.*, 18 Utah 2d 276, 421 P.2d 504 (1966), for the contention that the power to condemn cannot be obtained by implication, their reliance is misplaced. In that case the authority was created by statute to preserve and develop the Great Salt Lake, but its statutory powers with reference to the acquisition of property on Antelope Island did not include the right to take by eminent domain. Plaintiff in the present case clearly has express statutory condemnation powers for highway purposes.

■ Defendants further contend that "area" means one contiguous plane or extent of surface and that therefore the sewage lagoon servicing the rest stop cannot be located on the other side of the freeway. State health department regulations require this type of lagoon to be at least 1,000 feet away from any inhabited location, presumably including a rest stop. Since, as stated above, a sewage lagoon is essential to the maintenance of the rest area and contiguity is not a statutory requirement in the exercise of eminent domain, defendants' contention is without merit.

Likewise without merit is defendants' claim that the condemnation resolution of the Department of Transportation is fatally defective. Defendants argue that the taking for a sewage lagoon is neither a state

highway nor a roadside rest area and is therefore not a legitimate purpose. As set out above, condemnation for rest area sewage disposal facilities is authorized by necessary implication, and the resolution describing the parcel to be taken for such facilities is legally sufficient.

Defendants also urge that the proposed location of the sewage lagoon was arbitrarily determined and that its construction will constitute a waste of public funds.

■ In support of its excessive costs argument, defendants filed two affidavits after the hearing of their motions, along with their memorandum on the applicable law. These affidavits were made by contractors whose cost estimates for the lagoon construction differed substantially from those contained in testimony presented at the hearing. The trial court properly declined to accept the affidavits, stating in its Memorandum Decision:

At the time of the hearing no evidence was introduced at the hearing by the defendants that would controvert testimony given by the plaintiff's engineer, however, defendants seek to do so now by affidavits attached to their memorandum which adds additional evidence. Of course, the time for taking evidence was set previously at the hearing and the memorandum to be filed was memorandum in law applicable to this case and not the introduction of further testimony.

■ We are likewise precluded from consideration of matters raised in the affidavits. Inasmuch as the presentation of the affidavits was untimely, they are not properly before this Court. Evidence not offered at the hearing cannot be considered for the first time on appeal, *Edgar v. Wagner*, Utah, 572 P.2d 405 (1977).

■ Also, in its Memorandum Decision in the present matter, the court found that "the evidence taken at the hearing . . established this was the cheapest and best method of taking care of the sewage problem." The order of immediate occupancy issued by the trial court was based on evidence properly before the court. Where such an order is supported by ample evidence it is not arbitrary and will not be disturbed on appeal. *Salt Lake County v. Ramoselli*, Utah, 567 P.2d 182 (1977); *Bountiful v. Swift*, Utah, 535 P.2d 1236 (1975).

■ As to the selection of the particular site for the sewage lagoon, the general rule was stated by this Court in *Postal Telegraph Cable Co. of Utah v. Oregon Short Line Railroad Co.*, 23 Utah 474, 484, 485, 65 P. 735, 739 (1901), as follows:

It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with. With the degree of necessity or the extent which the property will advance the public purpose, the courts have nothing to do. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. [Citations omitted.]

The limitation on the scope of judicial review of the selection of sites taken under eminent domain powers is also described in 1 *Nichols on Eminent Domain*, [hereafter *Nichols*], § 4.11[3], at 4–184, 4–185:

[T]he legislature may, and usually does, delegate the power of selecting the land to be condemned to the public agent that is to do the work; in such case it makes little, if any, difference whether the grant of authority is, in terms, limited to such land as is "necessary" for the purpose in view, for a general grant of authority carries the same limitation by implication and in either case *the necessity is for the condemnor and not for the courts to decide, and the decision of such condemnor is final as long as it acts reasonably and in good faith.* [Emphasis added.]

Plaintiff was not found to have acted other than in good faith; we therefore reject defendants' objection to the site selection in this case.

We turn now to defendants' challenge of the shared-use provisions of the agreement prepared by plaintiff.

It is admitted that plaintiff will not immediately need the full capacity of the sewage lagoon; the size of the lagoon is based on a twenty-year need projection. The regulations promulgated by plaintiff provide that "[a] temporary capacity of the pond in excess of that needed by UDOT may be used by others." Private use will be terminated as plaintiff's needs increase.

Defendants contend that allowing private parties to use the sewage lagoon facilities confers upon them a special and direct benefit in violation of constitutional prohibitions against the use of state and federal funds. However, when benefits to individuals are incidental or secondary to the public use for which the power of eminent domain is exercised, the taking is not invalid. See 2A *Nichols*, § 7.222 and cases cited at note 1. Nor is it impermissible, when a taking is for a public use, for a by-product of the property condemned to be sold for private profit. 2A *Nichols*, § 7.222[3]; *Kaukauna Water Power Co. v. Green Bay & Mississippi Canal Co.*, 142 U.S. 254, 12 S.Ct. 173, 35 L.Ed. 1004 (1891). *Nichols* further states (§ 7.222[4], at 7–59): "Where, despite the commingling of private and public uses, the taking will aid in the establishment of a public project, the courts are disposed to ignore the private element as purely incidental . . . ." See *In re*

*Opinion of Justices*, 356 Mass. 775, 250 N.E.2d 547 (1969); *Washington-Summers, Inc. v. City of Charleston*, 430 F.Supp. 1013 (W.Va.D.C.1977).

When property is taken for public use, future needs may be properly considered when the evidence indicates a necessity to take such needs into account. There is no constitutional requirement that a taking be limited only to a present public necessity. *Nichols*, § 7.223[2]; *Edwards v. Cheyenne*, 19 Wyo. 110, 114 P. 677 (1911); *Kaukauna Water Power Co. v. Green Bay & Mississippi Canal Co., supra.*

A review of the record in this case reveals there is ample support for the decision of the court below. We therefore affirm the trial court's order of immediate occupancy and its denial of defendants' motion to dismiss.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.