**2016 UT App 169**

## THE UTAH COURT OF APPEALS

UTAH DEPARTMENT OF TRANSPORTATION,
Appellee,
*v.*
COALT INC.,
Appellant.

Opinion
No. 20150149-CA
Filed August 4, 2016

Second District Court, Farmington Department
The Honorable John R. Morris
No. 080700367

Michael R. Carlston, Rodney R. Parker, and Robert T.
Denny, Attorneys for Appellant

Sean D. Reyes, Brent A. Burnett, and Randy S.
Hunter, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
GREGORY K. ORME and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

ROTH, Judge:

¶1 In connection with the construction of the Legacy Parkway Project (also known as the Legacy Highway), the Utah Department of Transportation (UDOT) exercised its power of eminent domain to condemn approximately sixty-five acres of property (Parcel 84) in Davis County, Utah, that Coalt Inc. owned. Following a four-day bench trial, the court ruled that UDOT had authority to condemn Coalt's land and that Coalt,

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

although entitled to compensation, was not entitled to any incremental increase in value attributable to the Legacy Parkway Project itself. Coalt argues on appeal that the district court erred in deciding that UDOT had authority to condemn its property. Alternatively, Coalt contends that if UDOT had condemnation authority, then the court erred by not considering any enhanced value attributable to the project in determining just compensation for the taking of Parcel 84. We conclude that the district court did not err when it determined that UDOT's condemnation of Parcel 84 was "a proper exercise of eminent domain." But we also conclude that the district court should have considered the effect of the Legacy Parkway Project in determining just compensation for the taking. Accordingly, we remand to the district court to redetermine the amount to be awarded to Coalt for the taking.

BACKGROUND[2]

¶2      Planning for the Legacy Parkway Project began over twenty years ago with the goal of easing traffic congestion between Salt Lake and Davis counties. The Legacy Highway was slated for construction west of the existing interstate, and due to its proximity to the Great Salt Lake and the lake's ecosystem, environmental impacts were a concern from the outset. UDOT began acquiring land, not only to build the highway itself, but also to mitigate the "environmental impacts of the construction, operation, and maintenance of the Legacy Parkway." As part of this process, UDOT, the United States Federal Highway Administration (the FHA), and the United States Army Corps of Engineers (the Corps) completed a Final Environmental Impact

---

2. "On appeal from a bench trial, we review the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Alvey Dev. Corp. v. Mackelprang*, 2002 UT App 220, ¶ 2, 51 P.3d 45 (citation and internal quotation marks omitted).

Statement (the Final EIS) in June 2000. The Final EIS set forth in detail the scope of the Legacy Parkway Project, including identification of the land needed for mitigation of the environmental impacts of the project. Notably, Parcel 84 was not identified as part of the project in the Final EIS, although other parcels of Coalt's land were identified for mitigation purposes.

¶3    In January 2001, the Corps issued a Record of Decision approving the route for the Legacy Parkway along with the necessary federal permits. Just weeks later, several public interest environmental groups (public interest litigants)[3] brought suit in the United States District Court for the District of Utah, asserting that the Final EIS did not comply with federal environmental law and sought to vacate the permit. *See generally Utahns for Better Transp. v. United States Dep't of Transp.*, 180 F. Supp. 2d 1286 (D. Utah 2001). When the court ruled in UDOT's favor, the public interest litigants filed an appeal with the Tenth Circuit Court of Appeals. While that appeal was pending, the public interest litigants also filed an emergency motion for a preliminary injunction, which the Tenth Circuit granted. The preliminary injunction prohibited UDOT from "any further action that will disturb the ground or vegetation in the proposed right of way," essentially bringing the project to a halt. *Utahns for Better Transp. v. United States Dep't of Transp.*, Nos. 01-4216, 01-4217, 01-4220, 2001 WL 1739458, at *5 (10th Cir. Nov. 16, 2001). In September 2002, the Tenth Circuit ruled that portions of the Final EIS were inadequate and remanded the case for further review. *See generally Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152 (10th Cir. 2002). Over the next two years, UDOT, the FHA, and the Corps completed additional environmental reviews and subsequently put out for public

---

3. Initially, the public interest litigants included Utahns for Better Transportation, Salt Lake City Mayor Rocky Anderson, and the Sierra Club. Eventually, the group grew to include the Future Moves Coalition, FRIENDS of Great Salt Lake, Great Salt Lake Audubon, and the League of Women Voters of Salt Lake as well.

comment an updated Draft Supplemental Environmental Impact Statement in December 2004. Again, Parcel 84 was not identified as part of the project.

¶4     During the public comment period, the public interest litigants asserted that UDOT, the FHA, and the Corps had again failed to comply with federal environmental law, and they threatened further litigation if UDOT did not take steps to resolve the problems that the public interest litigants had identified. In September 2005, UDOT and the public interest litigants began settlement negotiations and eventually reached an "Agreement in Principle" that would "resolve and settle differences over the Legacy Parkway project." That agreement, among other things, provided for additional environmental mitigation:

> Mitigation
>
>     UDOT will acquire approximately 125 acres of land located west of the Legacy Parkway at 500 South as long as this land is accepted by the U.S. Army Corps of Engineers for use for mitigation for other (non-Legacy Parkway) transportation projects in the North Corridor. Corps approval is a condition precedent to completion of a final settlement.
>
>     This Mitigation Property will be managed as nature preserve in coordination with Legacy Nature Preserve.

Parcel 84 was a part of the acreage described in this provision. One month later, UDOT and the FHA approved the Final Supplemental Environmental Impact Statement (the Final Supplemental EIS) for the Legacy Parkway Project without including Parcel 84. At about the same time, UDOT sent a letter to the Corps stating that the 125 acres (the Mitigation Property) identified in the Agreement in Principle would be "in addition to

the mitigation proposed for [permitting] the Legacy Parkway" and that "UDOT would like to work with the Corps . . . to establish procedures for utilizing any excess mitigation credits generated from this additional mitigation property" "for other projects in the future." The Corps agreed that the "acquisition of the [additional] lands would be a benefit to the Legacy Nature Preserve" and therefore "the property [could] be used to generate wetland mitigation credit" that in the future could be "applied to a [different] transportation project located in the North Corridor."

¶5     UDOT and the public interest litigants eventually signed the Settlement Agreement, thereby ending the years-long litigation that had delayed the Legacy Parkway Project. The Settlement Agreement provided,

> UDOT will establish additional consolidated offsite mitigation for transportation projects by obtaining approximately 121 acres of mitigation property located in the vicinity of 500 South, west of the Legacy Parkway alignment ("Mitigation Property") . . . .
>
> > (1) The U.S. Army Corps of Engineers has provided a letter advising that it will allow credits from this Mitigation Property to be used as mitigation for transportation projects.
> >
> > (2) This Mitigation Property will be managed in coordination with the Legacy Nature Preserve, for purposes of a nature preserve and the property will be subject to the same deed restrictions as apply in the [permit] to property in the Legacy Nature Preserve.

> (3) UDOT may, with approval of the U.S. Army Corps of Engineers, adjust the boundaries of the Legacy Nature Preserve by using some or all of the Advanced Mitigation Property.

The Mitigation Property included the approximately sixty-five acres that comprised Parcel 84. While UDOT considered acquisition of the Mitigation Property to be integral to resolution of the litigation and hence to the viability of the project, neither of the federal permitting agencies—the FHA and the Corps—required such "additional mitigation" as a condition of "Federal approval of the Legacy Parkway Project or the issuance of the necessary Federal records of decisions and permits." With support from the governor, the Utah Legislature held a special session in November 2005 to approve UDOT's execution of a settlement agreement "to resolve all pending litigation and potential future claims of the [public interest litigants] and allow for the construction of the Legacy Parkway." The legislature approved the expenditure of more than $1,000,000 for the costs of this resolution, including purchase of the Mitigation Property.

¶6     In January 2006, the FHA issued a Record of Decision approving the Final Supplemental EIS. This Record of Decision contained a section titled, "STATE OF UTAH SETTLEMENT AGREEMENT," which began, "After the previous litigation delayed the project, resulting in higher construction project costs and adverse transportation impacts, a compromise to end that litigation and avoid future litigation was desirable." The Settlement Agreement included "certain design and operational configurations" for the Legacy Parkway, including a "restriction on large trucks," the use of "noise-reducing pavement," increasing the "curvature to the roadway" in order to "enhance the parkway setting," "meander[ing] the alignment of the [parkway's] footprint . . . [to] reduce[] impacts on wetlands and other sensitive environmental features," and a maximum speed of fifty-five miles per hour—to the end that "the former [public

interest litigants] and other interested parties will not bring suit." In addition, this section included a subsection titled "Terms Not Specific to the Legacy Parkway Project," which began, "Although technically unrelated to Legacy Parkway, UDOT will also undertake the following steps pursuant to the Settlement Agreement." One of those steps was that UDOT would "[o]btain additional mitigation property (121 acres) west of Legacy Parkway near 500 South to be managed for wetlands and wildlife mitigation," and the "[m]itigation credits for this property will be available for other transportation projects." The Record of Decision noted that the Settlement Agreement provided that:

> [t]he 121-ac[re] parcel . . . will not be used as mitigation for Legacy Parkway, but rather as possible mitigation for other transportation projects in the North Corridor, such as I-15 reconstruction. Once acquired, the site will be managed as part of the Preserve. In a letter from the Corps to UDOT, dated October 31, 2005, the Corps recognized that acquisition of the site will benefit the Preserve because the land will buffer the Preserve from planned commercial development that could indirectly impact wetlands on the Preserve. The amount of wetland mitigation credit for this additional 121-ac[res] of land will depend on the acres of wetlands on the site and the degree that the protection and management of the property will increase the overall functioning of neighboring wetlands on the Preserve.

¶7     The Corps issued a separate Record of Decision, also in January 2006, that approved the Final Supplemental EIS. This document also contained a section titled, "SETTLEMENT AGREEMENT." The Corps, like the FHA, recognized that the Settlement Agreement included "certain design and operational configurations for Legacy Parkway" and that additional "steps,

which are unrelated to the Legacy Parkway," would be taken by UDOT, including the acquisition of "additional 121-acre mitigation property west of the Legacy Parkway near 500 South to be managed for wetlands and wildlife mitigation, with credits available for other transportation projects." The Corps' Record of Decision also contained a paragraph that was similar to the FHA's, indicating that this additional acreage "will not be used as mitigation for the Legacy [Parkway Project], but rather as possible mitigation for other transportation projects in the north corridor, such as I-15 reconstruction." The Corps' Record of Decision also acknowledged that as a result of the Settlement Agreement, the public interest litigants "will not bring suit" challenging the Final Supplemental EIS or any Record of Decision or permit.

¶8       In June 2008, UDOT began proceedings to acquire Parcel 84 by eminent domain. *See generally* Utah Code Ann. § 78B-6-501 (LexisNexis Supp. 2015).[4] UDOT asserted that the condemnation was "necessary and in the public interest" for a state public transportation purpose pursuant to sections 72-5-103 and 78B-6-501 of the Utah Code. The case went to trial in March 2014. Ultimately, the district court ruled that UDOT had "authority to condemn property for the Legacy Parkway Project, as a state transportation purpose"; that condemning Coalt's property (including Parcel 84) "was necessary to effect a lifting of the stay on construction of the Legacy Parkway imposed by the Tenth Circuit Court of Appeals"; that UDOT "had authority to condemn [Coalt's] property"; that "the taking was for a public state transportation purpose"; and that, therefore, "[g]iven the public purpose served by [UDOT's] taking of [Coalt's] property, the taking was not merely for the purpose of conveying a benefit on one or more private parties," i.e., the public interest litigants.

_____

4. Because the statutory provisions in effect at the relevant times do not differ materially from the statutory provision now in effect, we cite the current version of the Utah Code Annotated for convenience.

The court also found that the scope of the Legacy Parkway Project was "broader" than the Final EIS and the Final Supplemental EIS. Therefore, the court concluded that the taking of Coalt's property for the Legacy Nature Preserve was "within the scope" of the project because "at some point" Coalt's property "would be needed" for the Legacy Parkway Project. In sum, the court concluded that UDOT's taking of Parcel 84 was "a proper exercise of eminent domain" under sections 72-5-102(2), 72-5-102(12), and 72-5-103(1) of the Utah Code. The court further determined that although Coalt was entitled to just compensation for the taking, it was not entitled to compensation for any increase in value resulting from the property's proximity to the Legacy Parkway Project. Coalt appeals.

ISSUES AND STANDARDS OF REVIEW

¶9     Coalt raises two issues on appeal. First, Coalt argues that section 72-5-102(12) of the Utah Code, "which authorizes condemnation for 'the mitigation of impacts from public transportation projects,'" does not authorize "the condemnation of property for the sole purpose of settling 'public interest' litigation that is interfering with completion of a project." (Quoting Utah Code Ann. § 72-5-102(12) (LexisNexis 2009).) "We review questions of statutory interpretation for correctness." *Utah Dep't of Transp. v. FPA West Point, LLC*, 2012 UT 79, ¶ 9, 304 P.3d 810.

¶10    Coalt next argues that "[i]f UDOT had authority to condemn Coalt's property," then "the significant positive impact of the Legacy project on the property's value [should] have been considered [by the district court] in fixing the property's fair market value." The issue of whether to include enhancement in value as a result of project proximity is a question of law reviewed for correctness. *Board of County Comm'rs of Tooele County v. Ferrebee*, 844 P.2d 308, 309 (Utah 1992) (reviewing "whether the trial court properly included an enhancement in

[property] value based on proximity to the [project]" for correctness).

ANALYSIS

¶11    An appellate court's power to review a public entity's decision to condemn a particular piece of property is limited. For example, in *Utah Department of Transportation v. Fuller* the Utah Supreme Court stated,

> "It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with. With the degree of necessity or the extent which the property will advance the public purpose, the courts have nothing to do. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance."

603 P.2d 814, 817 (Utah 1979) (quoting *Postal Tel. Cable Co. of Utah v. Oregon Short Line R.R.*, 65 P. 735, 739 (Utah 1901)). Further, "[w]e do not review the internal processes of, or external influences on, UDOT in arriving at its decision to condemn particular properties for transportation purposes, except for indications of bad faith." *Utah Dep't of Transp. v. G. Kay, Inc.*, 2003 UT 40, ¶ 11, 78 P.3d 612. Here, Coalt has not alleged that UDOT acted in bad faith or is guilty of oppression; instead, Coalt argues that the taking of Parcel 84 was not for a public purpose and that the condemnation was only "a response to a demand by private litigants challenging the Legacy Parkway environmental assessment." UDOT does not disagree with this characterization: "The sole purpose for condemning Coalt's property was to settle litigation that had halted completion of the Legacy Parkway Project." Thus, the question then becomes whether UDOT's

decision to condemn Parcel 84—a piece of land not required for environmental mitigation by the federal government in either the Final EIS or the Final Supplemental EIS for the completion of the Legacy Highway—was done for a state transportation purpose. Coalt has not persuaded us that UDOT's reasons for acquiring Parcel 84 exceed the broad reach of public purpose.

## I. The Public Transportation Purpose of Parcel 84

¶12    Coalt does not dispute that the Legacy Highway Project itself is a transportation project authorized by the state legislature for public use and therefore within the scope of a "public purpose" for which the power of eminent domain may be exercised. Rather, Coalt argues that "there was no public purpose" for taking Parcel 84 by eminent domain for the Legacy Highway Project. Coalt points us to decisions from the Utah Supreme Court to support its assertion that, "[t]he condemning authority bears 'the burden of coming forward with the evidence of, and the burden of persuasion to establish, its right to condemn.'" (Quoting *Utah State Road Comm'n v. Friberg*, 687 P.2d 821, 832 (Utah 1984), and citing *Salt Lake County v. Ramoselli*, 567 P.2d 182, 183 (Utah 1977); *Monetaire Mining Co. v. Columbus Rexall Consol. Mines Co.*, 174 P. 172, 177 (Utah 1918); *Tanner v. Provo Bench Canal & Irrigation Co.*, 121 P. 584, 589 (Utah 1911).) And, according to Coalt, "UDOT has all but admitted that it cannot identify a public purpose" for taking Parcel 84 by eminent domain, because "[t]he undisputed facts show that the taking was a response to a demand by private litigants challenging the Legacy Parkway environmental assessment" and that "neither UDOT nor the Corps believed the property was necessary to the project, either directly or as environmental mitigation." Coalt argues that section 72-5-103 of the Utah Code only permits UDOT "to condemn real property that is necessary for temporary, present, or reasonable future state transportation purposes" and that, as a result, "land in excess of that needed for a particular present or future project cannot be deemed necessary for a state transportation purpose." (Emphasis and internal quotation marks omitted.)

¶13    The district court concluded that UDOT "ha[d] authority to condemn property for the Legacy Parkway Project, as a state transportation purpose"; that UDOT's "taking of property, including the property identified in the Settlement Agreement, was necessary to effect a lifting of the stay on construction of the Legacy Parkway imposed by the Tenth Circuit Court of Appeals"; that UDOT "had authority to condemn [Coalt's] property"; that "the taking was for a public state transportation purpose"; and that "[g]iven the public purpose served by [UDOT's] taking of [Parcel 84], the taking was not merely for the purpose of conveying a benefit on one or more private parties." The district court cited sections 72-5-102(2), 72-5-102(12), and 72-5-103(1) of Utah's Rights-of-way Act to conclude that UDOT's taking of Parcel 84 was "a proper exercise of eminent domain." *See generally* Utah Code Ann. § 72-5-101 to -406 (LexisNexis 2009). Subsection (2) of section 72-5-102 provides that a "state transportation purpose[]" includes the "mitigation from the effects" of construction, while subsection (12) provides that a state transportation purpose includes "the mitigation of impacts from public transportation projects." Further, the Rights-of-way Act provides that UDOT "may acquire any real property or interests in real property necessary for temporary, present, or reasonable future state transportation purposes by gift, agreement, exchange, purchase, condemnation, or otherwise." *Id.* § 72-5-103(1). We readily conclude that the condemnation of Parcel 84 fell within the broad public purpose encompassed by these provisions.

¶14    The district court concluded that the condemnation of Parcel 84 was for a public purpose because it "was necessary" as a component of the overall plan to move the Legacy Parkway Project forward by effectively "lifting . . . the stay on construction." Here, UDOT had designated that a certain amount of the land it had acquired for the Legacy Highway Project be set aside as the Legacy Nature Preserve and managed for the purpose of mitigating the environmental impact of the project on wetlands and wildlife in the area. UDOT believed that the land already acquired and set aside for this purpose was

sufficient to mitigate the project's anticipated effects, and the Corps and the FHA agreed. But the public interest litigants did not. *Cf. Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1180 (10th Cir. 2002) (holding, in response to the public interest litigants' arguments, "that limiting the wildlife impact analysis so that migratory birds are beyond its scope renders the FEIS inadequate"); *cf. id.* at 1192 (holding, in response to the public interest litigants' arguments, that by limiting its "wildlife impact analysis . . . to consideration of impacts within 1000 feet of the project," the Corps had "acted arbitrarily and capriciously in granting the [Clean Water Act] permit" for the Legacy Parkway Project). And, among other things, the public interest litigants sought to have additional land immediately adjacent to the Legacy Nature Preserve set aside in order to provide further environmental mitigation as a condition of resolving the second round of project-related environmental litigation in the federal courts. As part of the Settlement Agreement, UDOT agreed to acquire the Mitigation Property, which included Parcel 84, to establish additional offsite mitigation for transportation projects, and though the acquisition of the Mitigation Property was ostensibly unrelated to the federal permitting process for the Legacy Parkway Project, this property was certainly associated with it. For instance, the Mitigation Property was to "be managed in coordination with the Legacy Nature Preserve, for the purpose of a nature preserve" and could later be incorporated within the preserve's boundaries with the approval of the Corps. Because neither UDOT nor the Corps considered the additional property "technically" necessary to meet their own calculation of mitigation for the project or as a condition of the required "Federal approval of the Legacy Parkway Project," they agreed that "[m]itigation credits for [the Mitigation Property] will be available for other transportation projects." The Settlement Agreement incorporated this concept, providing that the Mitigation Property may be "used as mitigation for [different] transportation projects."

¶15 Further, even though the land would not officially be a part of the Legacy Parkway Project, "the Corps recognized that acquisition of the site will benefit the Preserve because the land will buffer the Preserve from planned commercial development that could indirectly impact wetlands on the Preserve." Thus, although beyond what the agencies themselves considered necessary for regulatory purposes, the acquisition of the Mitigation Property was still seen by UDOT, the FHA, and the Corps as related both in location and environmental effect to the Legacy Nature Preserve (a part of the Legacy Parkway Project) and as essential to resolution of the ongoing litigation. In addition, while UDOT and the federal agencies did not consider the additional land necessary to comply with applicable federal environmental regulations, the public interest litigants apparently did consider it an integral part of the resolution of their own concerns over the adequacy of environmental mitigation for the project. Thus, UDOT was faced with the choice of proceeding with litigation over the environmental impacts of the Legacy Parkway Project, which had already produced years-long delays and whose results could not be guaranteed, or compromising with the public interest litigants by making changes to the project, including an enlargement of the functional wildlife and wetlands mitigation footprint beyond what was needed for regulatory approval. UDOT decided to exchange certain environmentally related changes to the project, together with the creation of an additional mitigation area beyond the bounds of the project, for an end to the lengthy litigation and the burden of the uncertainty of the substance and timing of the ultimate outcome. The side agreement with the Corps that enabled UDOT to use the property as mitigation credits for future projects in the area enhanced the value of the settlement to UDOT.

¶16 Coalt does not contend that UDOT's decision to settle the litigation or the components of the Settlement Agreement were unreasonable under the circumstances. Rather, Coalt argues that the condemnation of Parcel 84—land that both UDOT and the Corps agree was not necessary to fulfill the environmental

regulations applicable to the project—"was a response to a demand by private litigants challenging the Legacy Parkway environmental assessment," and thus was for the benefit of a private party and not for an authorized public purpose. But this characterization is far too simple a description of what was at stake and what occurred here. After years of planning, UDOT had finally obtained a Record of Decision and the necessary Clean Water Act permit from the federal government to proceed with the Legacy Parkway Project, a transportation project it considered essential to reduce traffic congestion and meet increasing public transportation needs in the area. Before construction could begin, the project was halted by a lawsuit filed in federal district court by several public interest litigants arguing that the environmental impact of the Legacy Parkway Project had not been adequately assessed and would likely be significantly more substantial than the environmental studies asserted. UDOT's initial success in federal district court was reversed on appeal, and an injunction effectively halted the project for years. Eventually the Tenth Circuit Court of Appeals ruled in favor of the public interest litigants and remanded the matter to the district court for further review of the environmental impact statements. On remand, as is often the case with environmental litigation as complex as this case was, it appears that neither UDOT nor the public interest litigants could be assured of the outcome. Faced with the uncertainties inherent in the circumstances and having already experienced a lengthy and costly delay, UDOT agreed to "resolve and settle" differences with the public interest litigants regarding the Legacy Parkway Project so that it could move forward with highway construction. That resolution included UDOT's agreement to condemn an additional 121 acres of property, including Coalt's Parcel 84, to be preserved in its natural state for purposes of wildlife and wetlands mitigation.

¶17 From the public interest litigants' perspective, the additional acreage was necessary for additional mitigation against the environmental impacts of the Legacy Parkway Project. From UDOT's perspective, the acquisition was an

essential part of a settlement that permitted an important transportation project to proceed after years of delay and, in addition, it could be used as mitigation for anticipated future projects in the area. And as a practical matter, because the additional property was immediately adjacent to the Legacy Nature Preserve, it effectively increased the environmental mitigation area for the Legacy Parkway Project, even if not officially part of it and even if any dispute whether it was necessary for such a purpose was unresolved. Thus, under the circumstances, UDOT's decision to acquire additional property was pervaded with public purpose and intimately related to the viability of a public transportation project. These complexly intertwined purposes cannot be narrowly characterized as "private" simply because the provision of the Settlement Agreement that led to the condemnation of Coalt's property also met the goal of the public interest litigants to enhance the environmental mitigation associated with a major public transportation project. *See Utah Dep't of Transp. v. G. Kay, Inc.*, 2003 UT 40, ¶ 11, 78 P.3d 612. Certainly, that aspect of the Settlement Agreement cannot reasonably be seen as invoking the misuse of condemnation authority to confer a private rather than a public benefit. Rather, it fits within UDOT's broad authority to "acquire any real property . . . necessary for . . . present, or reasonable future state transportation purposes," Utah Code Ann. § 72-5-103(1) (LexisNexis 2009), including "the mitigation of impacts from public transportation projects," *id.* § 72-5-102(12). *See also Town of Perry v. Thomas*, 22 P.2d 343, 346 (Utah 1933) ("The phrase 'public use,' as used in the eminent domain statute, has been given a liberal interpretation by this court.").

¶18    This analysis also resolves Coalt's arguments related to *Salt Lake County v. Ramoselli*, 567 P.2d 182 (Utah 1977). Coalt quotes *Ramoselli* for the proposition that "'[t]he question of necessity of the taking is the functional prerogative of the judicial system . . . . In every case, therefore, there is a judicial question whether the taking is of such a nature that it is or may be founded on public necessity.'" (Quoting *Ramoselli*, 567 P.2d at 183.) Coalt then asserts that this court cannot "fulfill its

'functional prerogative' to decide 'the question of necessity' when the project for which the project is 'necessary' is not identified, and [when there is] no time line or illumination of events that would create a time line[.]" In this regard, Coalt argues that UDOT cannot state that Parcel 84 was "necessary" to resolve the litigation surrounding the Legacy Parkway Project and then also state that Parcel 84 was "excess" because it "would be condemned for use for mitigation for other (non-Legacy Parkway) transportation projects." (Internal quotation marks omitted.) According to Coalt, "[e]ither [Parcel 84] is 'necessary' or it is 'excess,' but it cannot be both." But as we have discussed, the relationship of the acquisition of the Mitigation Property to the Legacy Parkway Project is both direct (it is integral to settlement of the lawsuit which had halted project construction) and indirect (it is immediately adjacent to the project's Legacy Nature Preserve and, as a practical matter, extends the environmental mitigation area for the project). The ability to use the acreage for mitigation credit in future projects in the area[5] is not the only public purpose; rather, these purposes are interrelated. As we have discussed, it appears that UDOT and the federal agencies made a conscious effort to technically isolate the Mitigation Property from the Legacy Parkway Project for regulatory purposes in order to ensure that the land could be credited to other projects in the area, while also recognizing its practical benefit to the Legacy Parkway Project itself and its

---

5. The Corps' agreement that the Mitigation Property "can be used to generate wetland mitigation credit" was based on the explicit condition that "mitigation credits would need to be applied to a transportation project located in the North Corridor." And the Record of Decision noted that the Settlement Agreement between UDOT and the public interest litigants recognized this condition: "The 121-acre parcel . . . will not be used as mitigation for Legacy Parkway, but rather as possible mitigation for other transportation projects in the North Corridor, such as I-15 reconstruction."

importance to settlement of the project-related litigation.[6] *See Utah Dep't of Transp. v. Fuller*, 603 P.2d 814, 817 (Utah 1979) ("'[U]nless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with.'" (quoting *Postal Tel. Cable Co. of Utah v. Oregon Short Line R.R.*, 65 P. 735, 739 (Utah 1901))).

¶19 And in the end, implicit in the Utah Legislature's approval of the Settlement Agreement to "allow for the construction of the Legacy Parkway" and the expenditures necessary to implement its terms (including the purchase of the Mitigation Property), was its view that this condemnation was for a public transportation purpose. *See Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 20, 332 P.3d 900 (stating that the eminent domain statute "not only enumerates authorized public uses but also includes an open-ended catchall" provision that "authorize[s] eminent domain for all other public uses authorized by the Legislature" (citation and internal quotation marks omitted)).

¶20 Accordingly, we conclude that the district court correctly determined that UDOT's condemnation of Parcel 84 under the circumstances here fulfilled a state public transportation purpose.

## II. The Valuation of Parcel 84

¶21 Coalt "challenges the trial court's decision to ignore Legacy Parkway project influence in [the] valuation of [its]

---

6. This is not a circumstance where, in order to settle a lawsuit over a public project, a state agency condemns a parcel of land physically and functionally unrelated to the project itself in order to satisfy a litigant's private interests, also unrelated to the project. We have no occasion to consider the quite dissimilar issues those circumstances might raise.

property." "The universal rule of damages in condemnation proceedings is one of just compensation. The condemnee [is] to be paid only so much as will compensate him for the damages to his property." *State v. Ward*, 189 P.2d 113, 116–17 (Utah 1948); *see also* Utah Const. art. I, § 22 ("Private property shall not be taken or damaged for public use without just compensation."). Further, "any enhancement or decrease in value attributable to the purpose for which the property is being condemned shall be excluded in determining the fair market value of the property." *Redevelopment Agency of Salt Lake City v. Grutter*, 734 P.2d 434, 437 (Utah 1986). However, "if the land currently at issue was not within the original scope of the project but is merely adjacent property, then an enhancement would be appropriate." *Board of County Comm'rs of Tooele County v. Ferrebee*, 844 P.2d 308, 311 (Utah 1992). "The 'scope of the project' test requires only a showing that 'during the course of the planning or original construction it became evident that land so situated would probably be needed for the public use.'" *Id.* (quoting *United States v. Reynolds*, 397 U.S. 14, 21 (1970)).

¶22   While UDOT addressed Coalt's first issue on appeal—whether the condemnation of Coalt's property was for a public purpose—the agency made no effort to defend the district court's decision regarding valuation. UDOT failed to include any response to Coalt's arguments on this issue in its brief or any reference to the issue at all.

¶23   In *Broderick v. Apartment Management Consultants, LLC*, 2012 UT 17, 279 P.3d 391, the Utah Supreme Court was confronted with an analogous briefing circumstance. In *Broderick*, an arson-caused fire resulted in property damage and personal injury to residential tenants of an apartment complex who subsequently alleged that the negligence of the management company contributed to their damages. *Id.* ¶¶ 1, 3–4. The district court granted summary judgment in favor of the management company and concluded that an exculpatory clause contained in the lease was "valid and enforceable" and "waiv[ed] the right [of the tenants] to bring an action for

negligence [against the management company]." *Id.* ¶ 1 (internal quotation marks omitted). On appeal, the tenants argued that the exculpatory clause was unenforceable because it "violate[d] Utah's public policy of encouraging landlords to act with care" and was against the public interest. *Id.* ¶¶ 2, 6. But the supreme court noted that the management company (the appellee) "ignore[d]" the tenants' "main arguments on appeal" and "[i]nstead of addressing" the tenants' arguments, chose to focus its response on other areas of the law. *Id.* ¶ 6. The court noted that rule 24(a) of the Utah Rules of Appellate Procedure "requires that the argument section of a brief contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on" and that a brief "must provide the reasoning and legal authority that will assist this court in resolving th[e] concerns on appeal." *Id.* ¶ 9 (alteration and omission in original) (citations and internal quotation marks omitted). The court then stated that

> Rule 24(b) makes the requirements of rule 24(a) applicable to the brief of the appellee. Accordingly, we expect that both appellants and appellees will adhere to the standard of legal analysis set forth in rule 24(a). In addition, we also require the brief of the appellee [to] contain the contentions and reasons of the appellee with respect to the issues presented in the opposing brief.
>
> Under our rules of appellate procedure, we need not address briefs that fail to comply with rule 24. Specifically, rule 24(k) states that [b]riefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court. And we have discretion to not address an inadequately briefed argument.

*Id.* ¶¶ 10–11 (alterations in original) (citations, footnotes, and internal quotation marks omitted). Accordingly, the supreme court "reject[ed]" the management company's brief "because of . . . inadequate briefing of the issues raised" by the tenants on appeal and, accordingly, accepted the tenants "plausible arguments." *Id.* ¶¶ 12–13, 18–21.

¶24 The same reasoning applies here. UDOT did not mention the issue of Parcel 84's valuation either in its brief as the appellee. In light of UDOT's failure to make any attempt to defend its position, this court is left with the burden of developing an argument in response, a burden "[w]e will not assume." *See id.* ¶ 9 ("Indeed, a reviewing court is not simply a depository in which [a] party may dump the burden of argument and research, and, accordingly, [w]e will not assume a party's burden of argument and research." (alterations in original) (citations and internal quotation marks omitted)). But because there is an institutional interest in the finality of the district court's decision independent from the interests of the litigants, we are generally more willing to affirm in the face of inadequate briefing than we are to reverse. *Cf., e.g., West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 n.1 (Utah Ct. App. 1991) ("We remind counsel that it is our prerogative to affirm the lower court decision solely on the basis of failure to comply with the Utah Rules of Appellate Procedure."). Where reversal is an option, we might first consider whether the appellant's arguments for overturning the district court's ruling are themselves visibly deficient or whether the lower court's own explanation of the basis for its decision is itself strong enough to fill the void in the appellee's briefing and carry the day, especially in a case of significant import.

¶25 The district court's explanation of its decision here, whether ultimately right or wrong, is not extensive and has been competently called into question by Coalt's arguments on appeal. *See Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 36, 297 P.3d 38 (limiting *Broderick* to cases where the appellant made a legally plausible claim on appeal).

The district court based its conclusion that Coalt was not entitled to benefit from any enhanced value accruing from the project itself on UDOT's argument that Parcel 84 was not "part of the Legacy Project." The court relied upon *Board of County Commissioners of Tooele County v. Ferrebee*, 844 P.2d 308, 311–12 (Utah 1992), and that opinion's discussion of the "scope of the project test" to conclude that "it [was] evident that [Coalt's] property at some point would be needed for the Legacy Parkway Project" and that "[t]he taking was within the scope of the Legacy Parkway Project."

¶26　In *Ferrebee*, Tooele County planned to build an airport whose original design plan called for condemnation of an eighty-acre parcel of Ferrebee's land, which included the parcel at issue in the case. *Id.* at 309. Initially, the county acquired only thirty-seven of the acres by condemnation, and, due to budgetary constraints, approximately a decade passed before the county had funds to acquire the remaining land. *Id.* at 309–10. The district court awarded Ferrebee compensation for the remaining property based on his appraisal, which included "an enhancement [in value] of 125 percent based upon proximity to the airport." *Id.* at 310. The Utah Supreme Court held that the district court should not have included in the award any enhancement in value based upon proximity to the airport because Ferrebee's land was within the original scope of the project's design (although it had taken several years to actually acquire it). *Id.* at 312 (requiring that for a condemnation award to include an increment of enhanced value from the project itself that "the land [not] be within the scope of the original project" (emphasis omitted)).

¶27　Coalt contends that the district court's reliance on *Ferrebee* in concluding that Parcel 84 was within the scope of the Legacy Highway Project is misplaced because "the subject property [in *Ferrebee*] was always within the scope of the project," while Parcel 84 was not added to the Legacy Parkway Project until well after the design of the project was complete—in fact, it had become the basis for the Final EIS. Additionally, and quite

persuasively, Coalt argues that "UDOT should not be permitted to repeatedly state that [Parcel 84] is unrelated to the Legacy Parkway in order to preserve a bargaining chip with the Corps [for the purpose of mitigation credit on future projects], and then switch positions when compensation is the issue." As a corollary, Coalt points out that "[i]f [Parcel 84] had been condemned as part of whatever future project it may eventually mitigate, then it would be clear that the influence of the property's proximity to Legacy Parkway and the Legacy Nature Preserve would have to be considered in setting its value." According to Coalt, the question "is whether [Parcel 84 was] probably within the scope of the project from the time [UDOT] was committed to it," and if it was not, but, instead, "merely adjacent" to the Legacy Parkway Project, then "the subsequent enlargement of the project to include [Parcel 84] . . . ought not to deprive [Coalt] of the value added in the meantime by the proximity of the improvement." (Citing *United States v. Reynolds*, 397 U.S. 14, 17 (1970).) Therefore, according to Coalt, "[f]or compensation to be fair and just, it must reflect the fair value of the land to the landowner," with the effect of the project taken into account. (Citing *Utah State Road Comm'n v. Friberg*, 687 P.2d 821, 828 (Utah 1984).)

¶28   Coalt's argument appears on its face to be a reasonable critique of the district court's decision, and although a response from a motivated opponent might undermine its plausibility, no such response has been offered by UDOT. *See Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 36. Under the circumstances, then, we "may . . . treat such a failure . . . as an acknowledgment of the statement of facts contained in appellants' brief, and also indulge a strong inference that the law is as cited and argued by appellants' counsel." *See Fitzgerald v. Salt Lake County*, 449 P.2d 653, 654 (Utah 1969) (footnote omitted).

¶29   Accordingly, we view the institutional interest of preserving the finality of the district court's ruling in this case to be at low ebb. We therefore reverse the district court's valuation

decision and remand for the court to redetermine just compensation for the property at issue, taking into account any increase in value that may be attributable to the Legacy Parkway Project.

CONCLUSION

¶30    We conclude that the district court did not err in holding that the condemnation of Parcel 84 was for a public transportation purpose. We also conclude that the district court erred regarding the valuation of Parcel 84 and, accordingly, we remand to the district court to determine the land's value consistent with our decision.

————