2003 UT 40

**UTAH DEPARTMENT OF TRANSPORTATION, Plaintiff and Appellee,**

v.

**G. KAY, INC., Defendant and Appellant.**

**No. 20020063.**

Supreme Court of Utah.

Sept. 26, 2003.

Mark L. Shurtleff, Att'y Gen., Edward O. Ogilvie, Asst. Att'y Gen., Salt Lake City, for plaintiff.

George K. Fadel, Bountiful, for defendant.

PARRISH, Justice:

¶ 1 In this interlocutory appeal, we are called upon to examine whether Utah law authorizes condemnation of private property for the purpose of mitigating the environmental impacts of highway construction. Specifically, we are asked to decide whether the Utah Department of Transportation ("UDOT") was authorized to condemn property in order to create a nature preserve in connection with the construction of the Legacy Parkway Project, also known as the Legacy Highway. The trial court held that UDOT had such authority. We affirm.

## FACTUAL BACKGROUND

¶ 2 The proposed Legacy Parkway Project consists of a fourteen-mile highway linking Interstate 215 and the Interstate 15/U.S. Highway 89 interchange in Farmington, Utah. Because construction of the highway would necessitate filling wetlands subject to federal regulation, UDOT was required to obtain a permit from the United States Army Corps of Engineers ("COE") under section 404 of the Clean Water Act. *See* 33 U.S.C. § 1344 (2003). In order to obtain the required permit, UDOT proposed the creation of the Legacy Nature Preserve, a 2,100-acre area set aside for the purpose of mitigating the environmental impacts of the proposed highway.

¶ 3 UDOT brought an action to condemn property owned by G. Kay, Inc. ("G.Kay"), for use in constructing the highway and nature preserve. G. Kay moved to dismiss UDOT's complaint, asserting that UDOT had no authority to condemn its property for the purpose of environmental mitigation. The trial court denied G. Kay's motion and entered an order of immediate occupancy in favor of UDOT. G. Kay filed an interlocutory appeal to this court.[1] This court has jurisdic-

---

1. Subsequent to the entry of the order of immediate occupancy by the trial court, a panel of the United States Court of Appeals for the Tenth Circuit enjoined any further construction activi-

tion pursuant to Utah Code Ann. section 78–2–2(3)(j).

## DISCUSSION

¶ 4 G. Kay mounts a multi-pronged attack on UDOT's authority to condemn property for creation of the preserve. First, G. Kay contends that creation of a large scale nature preserve is not a purpose authorized by the governing statute, Utah Code Ann. section 72–5–102. Alternatively, if the governing statute is interpreted to authorize condemnation for creation of the preserve, G. Kay asserts that the statute constitutes an impermissible delegation of legislative authority. G. Kay also argues that the statute does not authorize UDOT to condemn water rights.

■ ¶ 5 Before addressing each of G. Kay's arguments, we note the applicable standard of review. We apply a deferential standard of review to the district court's findings of fact, repudiating them only if they are clearly erroneous. Utah R. Civ. P. 52(a). We do not defer to the district court's conclusions of law, but review them for correctness. *State v. Pena,* 869 P.2d 932, 935 (Utah 1994).

■ ¶ 6 The starting point for assessing whether UDOT is authorized to condemn property for creation of a nature preserve is the language of the governing statute. UDOT relies on Utah Code Ann. section 72–5–103(1) for authority to condemn G. Kay's property. That statute permits UDOT to "acquire any real property or interests in real property necessary for temporary, present, or reasonable future state transportation purposes by gift, agreement, exchange, purchase, condemnation, or otherwise." Utah Code Ann. section 72–5–102 defines "state transportation purposes" to include, among

other things, "the construction, reconstruction, relocation, improvement, maintenance, *and mitigation from the effects of these activities* on state highways and other transportation facilities under the control of the department" and *"the mitigation of impacts from public transportation projects."* Utah Code Ann. § 72–5–102(2), (12) (2001) (emphasis added).

¶ 7 The statutory provisions specifically including mitigation of impacts as a "state transportation purpose" were added by amendment effective March 9, 2001. UDOT brought its action to condemn G. Kay's property on June 20, 2001. UDOT argues that the plain language of the amended statute clearly authorizes condemnation of G. Kay's property for use in creating the Legacy Nature Preserve. We agree.

¶ 8 G. Kay urges us to consider the legislative history of the 2001 amendment, which suggests, according to G. Kay, that the provisions permitting condemnation for mitigation purposes are not broad enough to include a project such as the preserve. We find, however, that the clear statutory language unambiguously authorizes condemnation for projects dedicated to the mitigation of impacts from highway construction. Thus, we need not consider evidence of the legislature's intent beyond that reflected on the face of the statute. *See Day v. Meek,* 1999 UT 28, ¶ 6, 976 P.2d 1202; *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991).

■ ¶ 9 G. Kay next challenges UDOT's condemnation authority by asserting that UDOT was not pursuing transportation purposes when it condemned property for creation of the preserve. In so arguing, G. Kay relies on evidence that UDOT had planned to

---

ties, holding that the required environmental impact statement was defective on several grounds. *Utahns for Better Transp. v. United States Dep't of Transp.,* 305 F.3d 1152 (10th Cir.2002). While the injunction has resulted in delay and may conceivably result in the modification, or even termination, of the Legacy Parkway Project, we review the propriety of the district court's order of immediate occupancy based on the facts existing at the time of the district court's decision.

Utah Code Ann. section 72–5–103(1) provides that UDOT "may acquire any real property or interests in real property necessary for tempo-

rary, present, or reasonable future state transportation purposes." There is no evidence in the record, and no argument is made on appeal, to contradict the district court's findings that the Legacy Parkway Project was, at the relevant time, proceeding in a timely manner in accordance with a set schedule or timetable and that G. Kay's property was needed by or about the end of the year 2001. Moreover, we are aware of no authority suggesting that a properly issued order of occupancy may be set aside because of a change in circumstances occurring after entry of the order.

create the nature preserve prior to the time that the COE required it as a prerequisite to issuance of the section 404 permit. We find this argument unpersuasive in light of the fact that UDOT did not actually seek to condemn G. Kay's property until after the COE required environmental mitigation in connection with the issuance of the permit and after the legislature had amended the statute to allow condemnation for the purpose of mitigating the environmental impacts of highway construction.[2] Neither the statute as it existed prior to amendment nor UDOT's intent prior to the commencement of the condemnation action is relevant to the question of UDOT's statutory authority at the time of the condemnation.

■ ¶ 10 G. Kay next complains of the COE's involvement in UDOT's decision to create and expand the size of the preserve. Specifically, G. Kay contends that the condemnation statute does not authorize UDOT to acquire land for the purpose of satisfying an agreement with federal agencies. We disagree. The fact that an agency of the federal government exerted some influence in UDOT's decision regarding the creation and scope of the preserve does not invalidate UDOT's decision. Federal influence in UDOT's decision-making process would call UDOT's action into question only if it showed that UDOT was attempting to do something other than mitigate impacts of a state transportation project when it brought the action to condemn G. Kay's property for the preserve. Here, however, UDOT's interaction with the COE actually demonstrates that the proposed preserve was motivated by UDOT's desire to obtain the permit required to proceed with the project. It therefore supports, rather than undermines, the conclusion that creation of the preserve was motivated by a "transportation purpose."

■ ¶ 11 Any role played by federal agencies in selecting the particular land to be taken is likewise irrelevant. We do not review the internal processes of, or external influences on, UDOT in arriving at its decision to condemn particular properties for transportation purposes, except for indications of bad faith.

> "It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with. With the degree of necessity or the extent [to] which the property will advance the public purpose, the courts have nothing to do. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance."

*Utah Dep't of Transp. v. Fuller*, 603 P.2d 814, 817 (Utah 1979) (quoting *Postal Tel. Cable Co. of Utah v. Or. Short Line R.R. Co.*, 23 Utah 474, 484–85, 65 P. 735, 739 (1901)).

■ ¶ 12 Because we hold that the statute is broad enough to authorize condemnation of property for a mitigation project such as the preserve, we turn to G. Kay's alternative argument that the statute is an impermissible delegation of legislative power. G. Kay maintains that the statute, as we have just interpreted it, grants UDOT unfettered discretion to determine what types of projects are needed for mitigation and which lands must be condemned for mitigation purposes.

¶ 13 G. Kay cites *Great Salt Lake Authority v. Island Ranching Co.*, 18 Utah 2d 276, 421 P.2d 504 (1966), for the proposition that the statute impermissibly delegates legislative power. In that case, this court struck down a legislative grant of authority to an agency because there was "uncertainty" regarding the "area over which [the agency] was to exercise its functions" and the "objectives and purposes" to be served by the agency were undefined. *Id.* at 277, 421 P.2d at 505. Moreover, the court found no "limitation on the power granted," and the "powers, duties and responsibilities" of the agency were not identified. *Id.* at 278, 421 P.2d at 505.

¶ 14 In contrast to the situation in *Island Ranching*, the authority granted to UDOT

2. Indeed, the evidence on which G. Kay relies suggests that UDOT intended to acquire the land for the preserve through negotiation and purchase, rather than by condemnation. Thereafter, UDOT expanded the scope of the proposed preserve, and the legislature amended the statute to include authorization to condemn property for mitigation purposes.

under Utah Code Ann. sections 72–5–101 to – 115 is limited to specifically defined transportation purposes statewide. To include mitigation of impacts within those transportation purposes, as the legislature did in 2001, is not to unleash UDOT from all reasonable limitations. Rather, "mitigation," as defined in the statute, is a purpose logically linked to the construction, operation, and maintenance of roads and highways. This link is a sufficient "limitation on the power granted." Accordingly, we hold that the legislature did not make an unlawful delegation of authority to UDOT when it included the mitigation of impacts as a defined transportation purpose in section 72–5–102 of the Utah Code.

¶ 15 Finally, we address G. Kay's assertion that UDOT had no authority to acquire water rights by eminent domain. We find this argument to be without basis. The condemnation statute provides that UDOT "may acquire any real property or *interests in real property* necessary for temporary, present, or reasonable future state transportation purposes." Utah Code Ann. § 72–5–103(1) (2001) (emphasis added). Water rights are a type of interest in real property and thus may be condemned by UDOT for state transportation purposes. *See Spears v. Warr*, 2002 UT 24, ¶¶ 21–22, 44 P.3d 742 (recognizing that water rights constitute a real property interest).

¶ 16 We find no error in the district court's findings of fact, and its conclusions of law were correct. We therefore affirm the district court's denial of G. Kay's motion to dismiss and its issuance of an order of immediate occupancy in favor of UDOT.

¶ 17 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Judge NEHRING concur in Justice PARRISH's opinion.

¶ 18 Justice RUSSON did not participate herein; District Judge RONALD E. NEHRING sat.