*This opinion is subject to revision before final publication in the Pacific Reporter*
**2020 UT 58**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UTAH DEPARTMENT OF TRANSPORTATION,
*Petitioner and Cross-Respondent,*

*v.*

COALT, INC.,
*Respondent and Cross-Petitioner.*

No. 20161062
Heard February 12, 2018
Filed August 17, 2020

On Certiorari to the Utah Court of Appeals

Second District, Farmington
The Honorable John R. Morris
No. 080700367

Attorneys:

Sean D. Reyes, Att'y Gen., Stanford E. Purser, Deputy Solic. Gen.,
David M. Quealy, William H. Christensen, Asst. Att'y Gens.,
Salt Lake City, for petitioner and cross-respondent

Michael R. Carlston, Rodney R. Parker, Salt Lake City,
for respondent and cross-petitioner

JUSTICE PETERSEN authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 The Utah Department of Transportation (UDOT) condemned property owned by Coalt, Inc. in connection with the Legacy Parkway Project. The Legacy Parkway runs near the eastern shore of the Great Salt Lake and its wetlands. Before construction could begin, federal law required study of the

project's potential environmental impact and approval from federal agencies. In 2000, a Final Environmental Impact Statement was released. This statement did not rely on the specific property at issue in this case (Parcel 84) to mitigate the environmental impact of the Parkway. The federal agencies gave the required approvals. But the Salt Lake City mayor and numerous public interest groups disputed the adequacy of the environmental impact statement and argued that UDOT was not doing enough to protect the environment.

¶2    After years of litigation in federal court, during which the project was at a standstill, UDOT entered into a settlement agreement with the public interest litigants. As part of the settlement, UDOT agreed to a number of new conditions, including acquisition of an additional 121 acres of mitigation property that would be managed in connection with the Legacy Nature Preserve. This property included Parcel 84. Because the federal agencies did not require this additional mitigation for their approval of the project, the United States Army Corps of Engineers (Corps) agreed to allow UDOT to credit the 121 acres (including Parcel 84) toward mitigation of future transportation projects in the area that required the Corps' approval.

¶3    In light of this background, Coalt argues that UDOT did not take Parcel 84 for the Legacy Parkway, but to pay a "ransom" demanded by the public interest litigants to settle the federal litigation and to mitigate future unspecified transportation projects. Based on these assertions, Coalt argues that UDOT does not have the authority to condemn its property because these are not valid "state transportation purposes"[1] or "public use[s]"[2] as required by state law.

¶4    In the alternative, Coalt asserts that if we conclude UDOT does have authority to condemn property for these purposes, then Coalt's compensation for the taking should include any increased market value caused by Parcel 84's proximity to the Legacy Parkway. The applicable statute states that "any decrease or increase of the fair market value of real property prior to the date of valuation caused by the public improvement for which such

---

[1] *See* UTAH CODE § 72-5-103(1).

[2] *See* UTAH CONST., art. I, § 22; UTAH CODE § 78B-6-504(1)(d).

property is acquired or by the likelihood that the property would be acquired for such improvement . . . will be disregarded in determining the compensation for the property." UTAH CODE § 57-12-13(3) (1972).[3] Coalt argues that "the public improvement for which the property was acquired" was not the Legacy Parkway but the future unspecified transportation projects referenced in the settlement agreement. On this basis, Coalt argues that the market value of Parcel 84 should include any increase or decrease caused by the property's proximity to the Legacy Parkway.

¶5 The court of appeals affirmed the district court's determination that UDOT has the authority to condemn Coalt's land. However, it reversed the district court and held that just compensation should include any enhanced value caused by the Legacy Parkway. This was primarily due to the court of appeals' determination that UDOT had inadequately briefed the valuation issue. The court of appeals did not analyze whether the district court was correct on the merits.

¶6 We agree with the court of appeals that UDOT has authority to condemn Parcel 84. So we affirm that part of the court of appeals' decision. And while we also agree that UDOT's briefing on valuation was minimal, the adequacy of UDOT's briefing is not ultimately dispositive. This is because we conclude that Coalt has not provided a plausible basis for reversal of the

---

[3] During the relevant time period, the statute read,

> Before the initiation of negotiations for real property, an amount shall be established which is reasonably believed to be just compensation therefor, and such amount shall be offered for the property. In no event shall such amount be less than the lowest approved appraisal of the fair market value of the property. *Any decrease or increase of the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired or by the likelihood that the property would be acquired for such improvement*, other than that due to physical deterioration within the reasonable control of the owner, *will be disregarded in determining the compensation for the property.*

UTAH CODE § 57-12-13(3) (1972) (emphases added)).

district court's valuation decision. Accordingly, we reverse this portion of the court of appeals' opinion.

## BACKGROUND

¶7 Parcel 84 is an approximately 65-acre piece of undeveloped land in Davis County owned by Coalt. It is part of a larger 121-acre property that UDOT condemned to mitigate the environmental impacts of the Legacy Parkway Project.

*The Legacy Parkway Project and Related Litigation*

¶8 In the 1990s, the State of Utah determined that traffic congestion in southern Davis County had become a problem. UDOT began to meet with relevant federal and state agencies, political subdivisions, private parties, and members of the public to discuss potential solutions. One option included the construction of a highway west of Interstate 15. Early in the process, UDOT began to acquire property for the future construction of the highway and to mitigate its environmental impacts.

¶9 Before construction could begin, federal law required the completion of an environmental impact statement (EIS),[4] approval

---

[4] The National Environmental Policy Act requires federal agencies to "include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement" that includes:

> (i) the environmental impact of the proposed action,
> (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
> (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(C). "Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental

(continued . . .)

from the Federal Highway Administration (FHWA), and a Clean Water Act (CWA) permit from the Corps. A Final Environmental Impact Statement was released in June 2000 (2000 EIS). In January 2001, the Corps approved "the preferred alternative route" for the Parkway and granted the necessary CWA permit.

¶10 Within weeks, a number of public interest groups sued in federal district court to vacate the permit. The federal district court ruled in UDOT's favor, prompting the public interest groups to seek an injunction from the Tenth Circuit. The Tenth Circuit granted the injunction, which halted the project during the pendency of the appeal.

¶11 On appeal, the public interest litigants urged the Tenth Circuit to order the agencies to prepare a new or supplemental EIS and process a new CWA permit application that adequately addressed: "(1) mass transit alternatives, (2) alternative land use scenarios, (3) land use and growth impacts, (4) impacts on Salt Lake City, (5) wetlands and wildlife impacts, and (6) air quality impacts." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1162 (10th Cir. 2002), *as modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003).

¶12 Ultimately, the Tenth Circuit concluded that the 2000 EIS was "inadequate" in a number of ways and that the Corps' grant of the CWA permit was "arbitrary and capricious." *Id.* at 1192. The Tenth Circuit determined that in approving the project, the federal agencies had failed to adequately consider the impact of the Parkway on wildlife and whether less damaging alternatives were practicable. *Id.*

¶13 So UDOT and the FHWA returned to the drawing board. For two years they worked to complete new environmental studies. In December 2004, they released a draft of a new EIS for public comment (2004 Draft EIS). The 2004 Draft EIS did not include Parcel 84 as part of the mitigation for the project. After reviewing the 2004 Draft EIS, the public interest litigants were unsatisfied.

¶14 At this point, the project had been stalled for almost four years. In September 2005, UDOT entered into settlement negotiations with the litigants. The parties eventually reached a

_____

standards, shall be made available . . . to the public as provided by section 552 of Title 5 . . . ." *Id.*

settlement agreement that called for additional measures to protect the wetlands and its wildlife inhabitants from the effects of the Parkway, including a speed limit of fifty-five miles per hour, the prohibition of trucks, a ban on billboards, and noise-reducing pavement. The agreement also required additional land for environmental mitigation that would be managed in connection with the Legacy Nature Preserve. Parcel 84 was part of this additional mitigation.

*The Corps' Approval of Property for Future Mitigation Credit*

¶15 While the additional mitigation property was necessary to end the litigation that had halted construction, it was not a prerequisite to federal approval of the project. The settlement agreement stated that the Corps "has provided a letter advising that it will allow credits from this Mitigation Property to be used as mitigation for transportation projects." The agreement did not limit the mitigation credits to any specific project.

¶16 The Utah Legislature approved UDOT's execution of the settlement agreement by resolution in November 2005, "to resolve all pending litigation and potential future claims . . . and allow for the construction of the Legacy Parkway." In January 2006, both the FHWA and the Corps approved the Final Supplemental EIS.

*Condemnation of Parcel 84 and Ensuing Litigation*

¶17 UDOT subsequently began eminent domain proceedings to acquire Parcel 84. UDOT identified the Legacy Parkway as the project for which it was acquiring the property in its complaint and the attached Condemnation Resolution. Coalt fought the condemnation, arguing that UDOT did not have the authority to condemn Parcel 84 because it was not doing so for a transportation purpose or a public use, but to settle third-party litigation and mitigate a future unspecified transportation project.

¶18 After a bench trial, the district court rejected Coalt's argument and found in favor of UDOT. It ruled that UDOT had authority to take Parcel 84, concluding that it "was necessary to effect a lifting of the stay on construction of the Legacy Parkway imposed by the Tenth Circuit Court of Appeals," and that it was for a "public state transportation purpose."

¶19 With respect to determining just compensation for the taking, Coalt argued that UDOT took Parcel 84 for future transportation projects, not the Legacy Parkway, and that therefore the market value of Parcel 84 should include any

increase caused by the Legacy Parkway. The district court rejected this argument and excluded from the market value of Parcel 84 any appreciation caused by its proximity to the Legacy Parkway.

¶20  Coalt appealed. The court of appeals affirmed the district court on the issue of UDOT's authority. *Utah Dep't of Transp. v. Coalt Inc.*, 2016 UT App 169, ¶ 20, 382 P.3d 602. However, it reversed the district court's conclusion that Coalt was not entitled to compensation for the increased value of the property resulting from the influence of the Parkway. *Id.* ¶ 29. This holding was due in large part to the court's finding that UDOT had not adequately briefed the valuation issue. *Id.* ¶ 24. The court of appeals remanded for a redetermination of the property's fair market value, including the influence of the Parkway. *Id.* ¶¶ 29–30.

¶21 UDOT petitioned for certiorari review of the court of appeals' reversal of the district court's valuation decision and its determination that UDOT had inadequately briefed the issue. Coalt cross-petitioned for review of the court of appeals' decision that UDOT was authorized to condemn Parcel 84.

¶22 We granted certiorari on all issues. We exercise jurisdiction under Utah Code section 78A-3-102(3)(a).

**STANDARD OF REVIEW**

¶23 "On certiorari, we review the court of appeals' decision for correctness." *PC Riverview, LLC v. Xiao-Yan Cao*, 2017 UT 52, ¶ 20, 424 P.3d 162.

**ANALYSIS**

¶24  We are presented with three issues. First, we must decide whether UDOT has authority to condemn Parcel 84. If we conclude it does, we must then decide whether just compensation for the taking should include any increase in the value of Parcel 84 caused by the development of the Parkway itself. However, before we reach the merits of that question, we must address the adequacy of UDOT's briefing before the court of appeals. We address the scope of UDOT's authority first.

I. UDOT'S AUTHORITY TO CONDEMN PARCEL 84

¶25  Coalt argues that UDOT's taking of Parcel 84 exceeds its statutory and constitutional condemnation authority. Coalt's argument relies upon two related premises. Coalt asserts that UDOT took Parcel 84 not to mitigate the environmental impact of the Legacy Parkway, but as a "ransom" paid to private litigants so they would drop the federal litigation. Additionally, because the

federal agencies did not require the additional mitigation to approve the project and the Corps therefore agreed to let UDOT use it in obtaining Corps approval of future transportation projects, Coalt asserts that the mitigation included in the settlement agreement is not actually for the Legacy Parkway but for "unspecified future projects."

¶26 Based upon these antecedent presumptions, Coalt first argues that UDOT lacks statutory authority to take Parcel 84. Utah's general eminent domain statute permits condemnation only when necessary for a public use. *See* UTAH CODE § 78B-6-501. The eminent domain statute identifies many public uses, among which are "roads, byroads, streets, and alleys for public vehicular use," *id.* § 78B-6-501(2)(c)(v), and "all other public uses authorized by the Legislature," *id.* § 78B-6-501(2)(b). The public uses enumerated in this statute are the "starting point." *Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 20, 332 P.3d 900. The legislature has enacted a range of other statutes authorizing public uses beyond those listed here. *See id.* ¶ 21 n.2 & n.3.

¶27 With regard to public highways in particular, the Rights-of-Way Act empowers UDOT to "acquire any real property . . . necessary for temporary, present, or reasonable future state transportation purposes by . . . condemnation." UTAH CODE § 72-5-103(1). Section 102 lists a number of "state transportation purposes" including "the mitigation of impacts from public transportation projects." *Id.* § 72-5-102(12).

¶28 Coalt asserts that because settling litigation is not one of the state transportation purposes enumerated in the Rights-of-Way Act, UDOT has exceeded its statutory authority. But the fact that UDOT agreed to take the additional mitigation property as part of a settlement is not legally relevant in and of itself. What matters is the purpose of the taking. Coalt asks us to ignore the facts of the case before us, as demonstrated by a hypothetical Coalt advances in which it compares the scenario here with one in which a private citizen harasses UDOT with litigation to induce a settlement that would increase his personal residential property value. As the court of appeals noted,

> This is not a circumstance where, in order to settle a lawsuit over a public project, a state agency condemns a parcel of land physically and functionally unrelated to the project itself in order to satisfy a litigant's private interests, also unrelated to

the project. We have no occasion to consider the quite dissimilar issues those circumstances might raise.

*Utah Dep't of Transp. v. Coalt Inc.*, 2016 UT App 169, ¶ 18 n.6, 382 P.3d 602.

¶29 The very focus of the federal litigation was the question of what steps were necessary to minimize the environmental impact of running the Legacy Parkway along the wetlands of the Great Salt Lake. UDOT believed the 2000 EIS provided sufficient environmental protection. But the public interest litigants disagreed. The litigants did not advance a private, personal agenda. Rather their arguments centered on the sufficiency of the environmental impact statement.

¶30 The Tenth Circuit concluded that the litigants had identified legitimate problems with the 2000 EIS and the CWA permit. The Tenth Circuit concluded that in granting the CWA permit, the Corps had acted arbitrarily and capriciously because it had not adequately studied the impact of the highway on wildlife. The Tenth Circuit observed,

> The Great Salt Lake ("GSL") and the wetlands surrounding its shoreline serve as an important habitat for a variety of birds, reptiles, amphibians, and mammals, some of which are endangered. The wetlands of the GSL account for 75 percent of all wetlands in the State of Utah, whose total land area consists of only 1.5 percent wetlands. The shores of the GSL are internationally important because they are a link of the Pacific Flyway for migratory waterfowl and a link of the Western Hemisphere Shorebird Reserve Network ("WHSRN"). Some two to five million birds use the GSL yearly and 90 percent of that use is concentrated in the eastern shore.

*Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1161 (10th Cir. 2002), *as modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003).

¶31 The Tenth Circuit rejected the 2000 EIS and the CWA permit. UDOT spent two more years studying how much mitigation was necessary for the project to go forward. UDOT thought the solution was contained in the 2004 Draft EIS. But again, the public interest litigants disagreed. And as is always the case with litigation, UDOT had no guarantee that it would

prevail. So it resolved the dispute as to how much mitigation was necessary through compromise.

¶32 Coalt essentially asks us to conclude that unless UDOT deemed Parcel 84 to be necessary mitigation for the Parkway on its own, independent of any third-party influence, then UDOT did not really take the property *for* the project. Rather it took the property to appease the third party, thus addressing a private rather than a public purpose.

¶33 This is similar to the argument we rejected in another case related to mitigation of the Legacy Parkway, *Utah Department of Transportation v. G. Kay, Inc.*, 2003 UT 40, 78 P.3d 612. That case involved an earlier taking of land by UDOT for the Legacy Nature Preserve. *See id.* ¶¶ 2–3. We noted that "[b]ecause construction of the highway would necessitate filling wetlands subject to federal regulation," UDOT had to obtain the CWA permit discussed above. *Id.* ¶ 2. Before providing the permit, the Corps required the taking that was the subject of that case to offset the environmental effects of the Parkway. *Id.* Like Coalt argues here, the defendant in that case complained that "the condemnation statute does not authorize UDOT to acquire land for the purpose of satisfying an agreement with federal agencies." *Id.* ¶ 10. We disagreed:

> Federal influence in UDOT's decision-making process would call UDOT's action into question only if it showed that UDOT was attempting to do something other than mitigate impacts of a state transportation project when it brought the action to condemn G. Kay's property for the preserve. Here, however, UDOT's interaction with the [Corps] actually demonstrates that the proposed preserve was motivated by UDOT's desire to obtain the permit required to proceed with the project. It therefore supports, rather than undermines, the conclusion that creation of the preserve was motivated by a "transportation purpose."
>
> Any role played by federal agencies in selecting the particular land to be taken is likewise irrelevant. We do not review the internal processes of, or external influences on, UDOT in arriving at its decision to condemn particular properties for transportation purposes, except for indications of bad faith.

*Id.* ¶¶ 10–11.

¶34 Similarly, the fact that the public interest litigants influenced the final amount of mitigation that UDOT condemned for the Parkway is not necessarily material. Indeed, UDOT sought input from interested constituencies from the outset of the planning process. This would be relevant only if the facts showed that UDOT actually took Parcel 84 to do something other than mitigate the effects of the Parkway, or that UDOT acted in bad faith. Neither is the case here. After years of delay and having its first EIS and CWA permit thrown out by the Tenth Circuit, UDOT determined that the settlement agreement was necessary to end the dispute over environmental mitigation and lift the federal injunction that had halted the project. As in *G. Kay*, this demonstrates that UDOT's taking of Parcel 84 was motivated by its desire to proceed with the project. This supports rather than undermines the conclusion that the taking and associated mitigation was for the Parkway. The legislature and the governor agreed that the settlement was necessary to proceed with the project. We will not second-guess that determination absent an indication of bad faith.

¶35 Next, Coalt argues that because the settlement agreement stated that the Corps would consider the additional land as mitigation for other "transportation projects" without reference to a specific project, the taking cannot be "necessary" to a state transportation purpose or public use as required by state law, *see* UTAH CODE §§ 72-5-103(1), 78B-6-504(1)(b), because the nature of the future project and its timeframe are unknown. If that were actually what happened, Coalt would have a point. It is correct that the language of the settlement agreement states that the Corps would consider the additional mitigation toward other "transportation projects." But UDOT did not unnecessarily file a complaint to take Parcel 84 on the off-chance that it might be necessary to mitigate a future, unknown project. It made a beneficial agreement with the Corps, because the Corps did not require the additional mitigation for the CWA permit. The record facts clearly show that UDOT agreed to take Parcel 84 as mitigation for the Parkway.

¶36 We conclude that UDOT ultimately condemned the additional mitigation property, which includes Parcel 84, to mitigate the environmental impacts of the Parkway and to allow it to proceed with construction of the Parkway. These are unquestionably state transportation purposes under the Rights-of-Way Act. *Id.* § 72-5-102.

¶37 UDOT contends that it also had statutory authority to condemn Parcel 84 under the catch-all provision of the eminent domain statute because the legislature authorized the condemnation when it approved the settlement agreement. *See id.* § 78B-6-501(2)(b) (providing that eminent domain may be exercised for "all other public uses authorized by the Legislature"). Coalt disagrees that the resolution specifically authorized the taking. We need not resolve this issue as we have concluded that UDOT had ample statutory authority under the Rights-of-Way Act.

¶38 Finally, Coalt asserts that UDOT lacked constitutional authority to condemn Parcel 84 under the Takings Clause of the Utah Constitution, which permits property to be taken only for a public use.[5] Coalt argues that settling litigation is not a "public use." For the reasons articulated above, we reject Coalt's characterization of UDOT's purpose for condemning Parcel 84. The taking was to mitigate the impact of the Parkway and to lift the stay on construction. Coalt's constitutional argument is without merit.

¶39 Because we conclude that UDOT does have authority to take Coalt's property, we now analyze how Parcel 84 should be valued for purposes of just compensation.

## II. THE VALUATION OF PARCEL 84

¶40 UDOT challenges the court of appeals' decision that Coalt's compensation should include any increase in the value of its land caused by its proximity to the Legacy Parkway. As noted above, the district court found in favor of UDOT on this issue. But the court of appeals reversed the district court because it determined UDOT's briefing was inadequate on this point.

¶41 Accordingly, we must first address the adequacy of UDOT's briefing before the court of appeals on the issue of Parcel 84's valuation. While we agree that UDOT's briefing was minimal, we ultimately do not decide whether UDOT's briefing was adequate because it is not determinative. Regardless of the adequacy of UDOT's briefing, we cannot rule in Coalt's favor

---

[5] Article I, section 22 of the Utah Constitution states, "Private property shall not be taken or damaged for public use without just compensation."

because it has not provided a plausible basis for reversal of the district court. This is because Coalt's valuation arguments rely on the antecedent presumptions we rejected above.

¶42 The court of appeals concluded that UDOT's briefing on valuation was inadequate, finding that it had "made no effort to defend the district court's decision" and "failed to include any response to Coalt's arguments . . . or any reference to the issue at all." *Utah Dep't of Transp. v. Coalt Inc.*, 2016 UT App 169, ¶ 22, 382 P.3d 602. Relying on *Broderick v. Apartment Management Consultants, L.L.C.*, 2012 UT 17, 279 P.3d 391, the court of appeals reversed the district court and ruled in Coalt's favor after concluding that Coalt had advanced a plausible argument and "competently called into question" the district court's reasoning. *Coalt*, 2016 UT App 169, ¶ 25. The court of appeals did not analyze whether the district court's decision was "ultimately right or wrong." *Id.*

¶43 Rule 24(a)–(b) of the Utah Rules of Appellate Procedure requires, among other things, that both appellant and appellee briefs contain "reasoned analysis supported by citations to legal authority and the record." And an appellee brief must respond in substance to the issues presented in the appellant's brief. *Brown v. Glover*, 2000 UT 89, ¶ 22, 16 P.3d 540.

¶44 There is no "bright-line rule determining when a brief is inadequate." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196. And the "ultimate question" is not "whether there is a technical deficiency in [briefing] meriting a default." *Id.* (alteration in original) (quoting *State v. Nielsen*, 2014 UT 10, ¶ 41, 326 P.3d 645). "While this court will not lightly toss aside partially briefed but still discernable arguments, we are limited by the practical considerations that an unbriefed argument presents." *Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 50, 390 P.3d 314.

¶45 An appellant bears the burden of persuasion on appeal. *Broderick*, 2012 UT 17, ¶ 19. But a court may rule in favor of an appellant for purposes of that case if the appellee inadequately briefs an argument and the appellant provides a plausible basis for reversal. *See id.*

¶46 UDOT contests the court of appeals' characterization of its briefing as inadequate. UDOT points out that Coalt relies on the same premises for both its authority and valuation arguments,

and it asserts that it directly attacked those premises throughout its briefing in the court of appeals. We agree.[6] However, we note that UDOT refuted Coalt's assertions primarily in the authority context and devoted only one paragraph to valuation.

¶47  UDOT identifies this one paragraph as the point at which it addressed valuation before the court of appeals. While the paragraph does not use the word "valuation," we agree that it does cite the district court's findings and conclusions involving the issue. And UDOT does defend the district court's ruling in its favor, however briefly. But UDOT should have more explicitly addressed valuation, where Coalt raised it as a stand-alone claim.

¶48  Overall, we agree with the court of appeals that UDOT's briefing of the valuation issue was scant. But while this is a close call, we ultimately conclude that the adequacy of UDOT's briefing is not dispositive. Because Coalt's authority and valuation arguments rest on the same assertions, which UDOT has addressed, this is not a situation in which we have insufficient information to make a ruling. Nor must we bear the parties' burden of research.

¶49 Ultimately, we conclude that Coalt has not presented a plausible basis for reversal. Coalt's valuation argument relies on the same foundational presumptions that we rejected in the authority context. *See supra* ¶¶ 25–39. We cannot reject these assertions on one hand but find them plausible on the other.

---

[6] Coalt's brief states,

> The thrust of Coalt's valuation argument [in the court of appeals] was that its property was not part of the Legacy project. *Coalt relied upon its arguments concerning UDOT's statutory and constitutional authority*, as well as UDOT's statements in the settlement documents, to demonstrate that the trial court's decision that Coalt's land was "within the scope of the Legacy Parkway Project" was erroneous. . . . *Instead, it condemned the property to settle litigation and for mitigation of unspecified future projects unrelated to Legacy Parkway.*

(Emphases added.) This foundation underlies both Coalt's authority and valuation arguments.

Accordingly, we conclude that Coalt has not provided a plausible basis for reversal and reverse the court of appeals on this issue.

## CONCLUSION

¶50  UDOT condemned Parcel 84 as mitigation for the Legacy Parkway Project, which is a public state transportation purpose. It had authority to do so under the Rights-of-Way Act and the Utah Constitution. Accordingly, we affirm the court of appeals with regard to UDOT's condemnation authority.

¶51 With regard to the valuation of Parcel 84, we conclude that Coalt has not provided a plausible basis for reversal of the district court. Accordingly, we reverse the court of appeals and reinstate the judgment of the district court.

―――――――――